CIPRIANI & WERNER, P.C.
**Daniel D. Stofko, Esquire**
Attorney ID# 205771
409 Lackawanna Avenue
Suite 402
Scranton, PA  18503
570-347-0600

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Edward and Marla Biniek | : | NO:  3:14-1154 |
| | : | |
| vs. | : | **JURY TRIAL DEMANDED** |
| | : | |
| Marmaxx Operating Corporation | : | |
| d/b/a TJ Maxx and Jofran Sales, Inc. | : | |
| | : | |

## PRE-TRIAL MEMORANDUM
## OF DEFENDANT JOFRAN SALES, INC.

Defendant, Jofran Sales, Inc., by and through its counsel, CIPRIANI

& WERNER, P.C., by Daniel D. Stofko, Esquire, files the within Pre-Trial

Memorandum:

A.     Statement as to Federal Court Jurisdiction:

Pursuant to 28 U.S.C. §§ 1332(a), and 1441(a), this Court possesses

original jurisdiction of this action because the amount in controversy

exceeds $75,000 as alleged by Plaintiffs and because there is complete

diversity of citizenship of the parties.

1

B.    Summary of Facts and Contentions as to Liability:

Plaintiffs allege that on March 11, 2013, Plaintiff, Edward Biniek, was at the T.J. Maxx store in the Arena Hub Plaza in Luzerne County, PA, at which time he sat on a slatted side chair, when the right front leg fractured, causing him to fall and strike his back, neck and head on the tiled floor of the T.J. Maxx store.

Discovery revealed that chairs and other furniture typically were displayed at TJ Maxx on a raised platform.  The central question of fact in this case is whether the chair was on the raised platform or on the sales floor itself when the Plaintiff sat upon it.  Plaintiff alleges that the chair was defective and that such defect was the proximate cause of the Plaintiff's injuries.  Defendant Jofran submits that the chair was not defective, but broke only after the chair, positioned by Marmaxx on the edge of the raised platform, fell off the platform under Plaintiff's weight and fractured upon impact with the floor.

Plaintiff testified that he cannot recall if the chair was on the platform or on the floor when he sat upon it.  Notably, however, he testified that he did not move or touch the chair before sitting upon it.  His wife later testified that the chair was on the floor itself.  However, a former TJ Maxx employee, Tara Hughes, testified that she walked past the scene of the incident just

seconds before it occurred and at that time all the chairs were on the raised platforms.

Plaintiff has brought claims for negligence, strict liability and breach of warranties against both Marmaxx Operating Corporation d/b/a TJ Maxx and Jofran Sales, Inc.  Plaintiff Marla Biniek has brought a loss of consortium claim against both Marmaxx and Jofran.  Defendant Jofran has filed a crossclaim against Defendant Marmaxx, alleging that the subject incident occurred as the result of the negligence of Marmaxx.

C.    Statement of Undisputed Facts:

The statement of undisputed facts is contained within Plaintiffs' Pretrial Statement.

D.    Damages Alleged:

Plaintiff alleges in his Complaint that he suffered cervical disk displacement, including C4-5, C5-6 and C6-7 disk herniation, cervicalgia, cervical facet syndrome, cervical radiculopathy, brachial radiculitis, cervical hyperflexion and extension, muscle spasms, sleep disorders and superscapular neuropathy.

Plaintiff's first treatment after the March 11, 2013 incident was at the Emergency Room the following evening.  Plaintiff's initial diagnosis was cervicalgia.  He complained of neck/shoulder pain with radiation.  An April

2013 MRI showed degenerative disease comparable to a 2005 MRI.
Plaintiff treated with his chiropractor, Newhart Chiropractic, and was
referred to Dr. Albert Janerich. He had treated with both Dr. Newhart and
Dr. Janerich for neck and back pain prior to the subject incident.

In September 2013, Plaintiff had two trigger point injections in his
right shoulder. He followed with Dr. Janerich in February 2014 after noting
increased pain following heavy snow removal work. From February through
April 2014, Plaintiff had three cervical facet block injections at Advanced
Pain Management Specialists. Plaintiff then self-referred for consultation at
the Penn State College of Medicine interventional neuro-radiology spine
clinic. They recommended physical therapy, noting that his surgical MRI
study did not show any significant spinal cord or nerve impingement that
would be concordant to his complaints. Plaintiff thereafter had another
series of injections in the summer of 2014. He has continued with periodic
massage therapy and another course of injections in early 2015. He is not a
surgical candidate.

Plaintiff has no wage loss claim or claim for loss of earning capacity.

E.  Witness List:

    1.  Plaintiff Edward Biniek

    2.  Plaintiff Marla Biniek

3.    Joffrey Roy, President of Jofran Sales, Inc.

4.    Bob Roy, former President of Jofran Sales, Inc.

5.    Jarrod Fanelli, Employee of Marmaxx Operating Corporation

6.    Mary Lou Murtha, Employee of Marmaxx Operating Corporation

7.    Daryl Agrella, Employee of Marmaxx Operating Corporation

8.    Emalee Klinefelter, Employee of Marmaxx Operating Corporation

9.    Rebecca Bowers, Corporate Designee of Marmaxx Operating Corporation

10.   Tara Hughes, former employee of Marmaxx Operating Corporation

11.   Dr. Christopher P. Henderson, M.D.; Orthopedic Surgeon who performed June 5, 2015 Independent Medical Examination of Plaintiff Edward Biniek

12.   Duane R. Ferguson, P.E.; liability expert

13.   Dr. Albert Janerich, M.D.

14.   Dr. Joseph D. Paz, D.O., Advanced Pain Management Specialists

15.   Dr. William F. Newhart, D.C., Newhart Chiropractic Center

16.   Dr. Frank C. Olshemski, M.D., Plaintiff's family physician

17.   Dr. Harold J. Einsig, M.D., Advanced Pain Management
      Specialists

18.   Any of Plaintiff's treating physicians as identified through the
      medical records

F.   Summary of Expert Witness Testimony:

Duane R. Ferguson, P.E.:

Mr. Ferguson concludes in his report that the damage to the chair in light of the chair's construction is only consistent with the scenario where the chair tipped off the platform and impacted the floor, resulting in a fracturing of the wood itself. The failure of the chair is not consistent with loose connections and is not attributable to any defect in the chair. Further, the hardware attaching the chair leg to the seat box still is intact and firmly affixed to the seat box to this day. He notes that it is unknown when the blocking for the chair back became damaged, however, the splitting of the blocks is consistent with the scenario where the chair impacted the floor and the front leg broke.

There also is evidence of post incident destructive testing and additional damage/splitting of the blocks. Regardless of how the corner blocks became damaged, the chair back was securely fastened to the seat.

6

T.J. Maxx put markings/tags on the underside of the chair at the store.  T.J. Maxx did not note loose legs or cracking of the blocks.  The moisture level stated and shown in the Jofran Quality Assurance Reports do not show excessive moisture levels.

<u>Christopher P. Henderson, M.D.</u>:

Dr. Henderson is a board certified orthopaedic surgeon who practices at Scranton Orthopaedic Specialists, P.C. in Dickson City, PA.  On June 5, 2015, he saw Mr. Biniek for an Independent Medical Examination.  He took a full history from Mr. Biniek, reviewed his medical records, and did a comprehensive examination.   Dr. Henderson's diagnoses are (1) right shoulder contusion; and (2) cervical contusion/strain.

Dr. Henderson noted that he had the opportunity to personally review an MRI of the Cervical Spine dated April 16, 2013 and MRI of the Cervical Spine dated May 7, 2014.  There are what he would characterize as mild degenerative changes in multiple levels.  There is no evidence of disc herniation and no significant canal stenosis.  There is mild foraminal narrowing on the right at C5-6.  Dr. Henderson stated that he would classify all of these as age appropriate degenerative changes.  Specifically, Dr. Henderson opines as follows:

> He has had [issues] of his cervical spine that date back to 2002 from what I can tell with no significant change.  There have

7

also been several instances in the medical records where he has had complaints of neck pain, right shoulder pain and symptoms consistent with carpal tunnel syndrome. While he is still complaining of these similar types of symptoms, I do not think that they are causally related to this injury in March of 2013. During our visit, he expressed to me that he was having a lot of trouble sleeping from the symptoms, however, again on review of the medical records, specifically with Dr. Olshemski, his family doctor, he has been dealing with insomnia for years prior to this injury and he has tried multiple medications for this. I think he may have continued waxing and waning of his symptoms, again from the pre-existing degenerative changes.

On review of the medical records from Dr. Janerich, his neck pain complaints have been ongoing. A note from January 30, 2007 noted that his neck pain was about 60% of normal. A note from Dr. Janerich on October 28, 2013 noted that his neck was about 70% of normal which is an improvement from 2007 and after the injury. February 11, 2014, he did note increased neck pain, but felt that it may have been aggravated by the recent heavy snow and lots of heavy work and snow blowing he was doing. On April 28, 2014, his pain was 60% of normal. On January 16, 2015 it was 40% of normal.

The EMG Study from April 23, 2013 by Dr. Janerich was interpreted as a right C-7 radiculopathy, but I see no evidence of C7 nerve root compression on imaging and there are no symptoms that he points to in a specific dermatomal C-7 pattern. The EMG also showed possible right carpal tunnel syndrome which is certainly possible especially with the Tinel's sign on exam. I do not feel that this was caused by the injury though. A note by Dr. Olshemski of May 9, 2012 noted bilateral carpal tunnel syndrome symptoms. There was also noted at this time that he had right shoulder discomfort and it was felt likely from a trapezius muscle irritation.

Therefore, based on all of the history I obtained and the medical records I reviewed, the above-diagnosis is made and I do think that he has resolved completely from this. Any further treatment for his symptoms would not be as a result of the

8

injury sustained on March 11, 2013.  All of these opinions are made within a reasonable degree of medical certainty.

H.   Summary of Legal Issues and Legal Authority:

In a strict products liability action, a plaintiff must prove that (1) the product was in a defective condition; (2) the defective condition existed at the time the product left the defendant's control; and (3) that the defective condition proximately caused the plaintiff's injury.   Capece v. Hess Maschinenfabrik, 2015 WL 1291798, 2015 U.S. Dist. Lexis 35145 (M.D. Pa. 2015); Tincher v Omega Flex Inc., 104 A.3d 328 (Pa. 2014).

As noted above, the central question of fact in this case is whether the chair was on the raised platform or on the sales floor itself when the Plaintiff sat upon it.  Plaintiff alleges that the chair was defective and that such defect was the proximate cause of the Plaintiff's injuries.   Defendant Jofran contends that the chair was not defective, but broke only after the chair, positioned by Marmaxx on the edge of the raised platform, fell off the platform under Plaintiff's weight and fractured upon impact with the floor. Under this scenario, the case becomes one of simple negligence, relating to Marmaxx's policy of placing furniture on the sales floor on raised platforms.

To prevail in a negligence action, a plaintiff must plead and prove that (1) the defendant owed a duty of care (2) the breach of which (3) caused (4) damages.   Berrier v. Simplicity Mfg Inc., 563 F.3d 38,61 (3d Cir. 2009).

9

Plaintiff was a business invitee at Marmaxx's TJ Maxx store location at the time of the incident.

In their answers to interrogatories, Marmaxx stated that the chairs were placed on the platforms for display only. Specifically, Marmaxx stated that "[t]he subject chair was for display purposes only and was not intended to be used by customers in the store." Nevertheless, Marmaxx employees uniformly testified that there were no signs informing customer of this policy, and that they often saw customers sitting upon the furniture while on the platforms. Further, Marmaxx employees testified that they would not tell customers not to sit on the furniture on the platforms or that they were for display purposes only. Jofran submits that the fracture of the chair leg was the result of an impact with the sales floor, caused by Marmaxx's policy of displaying furniture for sale on raised platforms above their sales floor, and not the result of any defect in the chair.

I.     Stipulations:

(1) All medical records are authentic.

J.     Estimated number of Trial Days:

Three to Five.

K.     Other Pertinent Matters:

Defendant Jofran Sales, Inc. intends to file the following Motions in Limine:

(1) Motion in Limine for Adverse Inference Instruction Due to Spoliation of Evidence by Defendant Marmaxx Operating Corporation;

(2) Motion in Limine to Preclude Medical Opinions Outside Expertise;

(3) Motion in Limine to Preclude Insufficiently Certain Medical Expert Opinion Testimony;

(4) Motion in Limine to Preclude Needlessly Cumulative Evidence.

L.      Exhibit List:

See Exhibit "A", attached.  Counsel present pre-numbered exhibits at the time of the Pre-Trial Conference in this matter.

M.      Special Verdict Questions

See Exhibit "B", attached.

N.      Statement Regarding Settlement Authority

The person with settlement authority on behalf of Jofran Sales, Inc. has been informed of the requirements and possible sanctions under Local Rule 16.2 and will be present for the August 26, 2015 final pre-trial conference.

O.      Certificate under Local Rule 30.10

11

Not applicable.

P.      Non-Jury Trial Request for Findings

Not applicable.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

By:     *s/Daniel D. Stofko, Esquire*
        Daniel D. Stofko, Esquire
        Attorney for the Defendant
        Jofran Sales, Inc.

12