UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD BINIEK and | ) CASE NO. 3:14-1154 |
| MARLA BINIEK, | ) |
| | ) (JUDGE MANNION) |
| Plaintiffs | ) |
| | ) |
| v | ) |
| | ) |
| T.J. MAXX/THE T.J. MAXX | ) |
| COMPANIES, INC. and | ) |
| JOFRAN, INC., | ) |
| | ) |
| Defendants | ) |

## PLAINTIFFS EDWARD AND MARLA BINIEK'S MOTION IN LIMINE PURSUANT TO DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC.

Plaintiffs Edward and Marla Biniek, by and through their attorneys, Galfand Berger,

LLP, hereby file this Motion *in Limine* to Preclude the Testimony of Defendant Jofran, Inc.'s

Liability Expert Duane Ferguson Pursuant to Daubert v. Merrell Dow Phamaceuticals, Inc. and

in support thereof aver as follows:

1.     This matter arises from an incident that occurred on March 11, 2013 when

Plaintiffs Edward and Marla Biniek went to the T.J. Maxx store in the Arena Hub Plaza in

Wilkes-Barre for the purpose of purchasing kitchen chairs. As Plaintiff Edward Biniek sat on a

display chair that was on the floor to test the comfort of said chair, the chair suddenly and

without warning collapsed. Specifically, the right front leg of the subject chair separated and

broke away from the underside of the seat, causing Plaintiff to suddenly fall and violently strike

his back, neck, and head on the hard tiled floor of the T.J. Maxx store causing serious injuries.

2.     When Plaintiff sat on the chair, it was positioned directly on the hard tiled floor.

(Marla Biniek Dep., Exhibit B at 6:4-7:7; Aff. of Edward J. Biniek III, Exhibit C).

1

3.    Plaintiffs contend that the subject chair collapsed because it was defective when it was imported, assembled, distributed, and sold by Defendants Jofran and T.J. Maxx. Plaintiffs proceed on a theory of strict product liability.

4.    Defendant Jofran, Inc. hired Duane Ferguson, a mechanical engineer, to render an opinion regarding the design of the chair involved in Plaintiff's accident. (Exhibit A).

5.    Mr. Ferguson has absolutely no experience whatsoever in carpentry, woodworking, or furniture-making that would permit him to offer an opinion on the proper design, construction, and assembly of the subject wooden chair. He is therefore not qualified to offer an opinion in these areas and his testimony and report must be precluded.

6.    Mr. Ferguson's opinion that Edward Biniek must have fallen in the chair from atop the platform, rather than the chair collapsing while firmly on the hard tile ground, is not sufficiently tethered to any physical evidence in this case and is in fact merely speculation that runs contrary to testimony in evidence. See General Electric, 522 U.S. 136, 146 (1997); (Exhibit B at 6:4-7:7; Exhibit C).

7.    Marla Biniek was unwavering in her affirmative testimony that the subject chair was located firmly on the hard tile floor—not the elevated platform—when her husband sat down. (Exhibit B at 6:4-7:7). Edward Biniek, III, the Plaintiffs' son who was also present at the time of the incident, offered an affidavit reiterating that the subject chair was on the ground, not the platform. (Exhibit C). There is no evidence that suggests the subject chair was on the platform and Mr. Ferguson does not offer any.

8.    Mr. Ferguson made use of no methodology that would allow him to render an opinion with a reasonable degree of certainty. Instead, he relied on his own inexperienced and unqualified intuition.

2

9.      Because Mr. Ferguson is unqualified as an expert, bases his opinions on faulty assumptions, and makes conclusory statements without citing physical evidence in support thereof, his opinions are totally unhelpful to a jury and must be precluded.

10.     Mr. Ferguson must be precluded as violating Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) because he is unqualified, offers unreliable opinions based on unsupported speculation contrary to the facts of record, and is unhelpful to the jury. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).

WHEREFORE, Plaintiffs Edward and Marla Biniek respectfully request this Honorable Court GRANT this Motion *in Limine* and enter the attached proposed Order precluding Defendant Jofran Inc.'s liability expert Duane Ferguson from testifying.

Respectfully Submitted,

GALFAND BERGER LLP

BY:

RICHARD M. JUREWICZ, ESQUIRE
1835 Market Street, Suite 2710
Philadelphia, Pa. 19103
(215) 665-1600
rjurewicz@galfandberger.com
I.D. No. 39436

DATE:  09 / 11 / 15

3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD BINIEK and<br>MARLA BINIEK,<br><br>         Plaintiffs<br><br>    v<br><br>T.J. MAXX/THE T.J. MAXX<br>COMPANIES, INC. and<br>JOFRAN, INC.,<br><br>         Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CASE NO. 3:14-1154

(JUDGE MANNION)

**PLAINTIFFS EDWARD AND MARLA BINIEK'S BRIEF (MEMORANDUM OF LAW) IN SUPPORT OF HIS MOTION IN LIMINE PURSUANT TO DAUBERT v. MERRELL DOW PHARMACEUTICALS, INC.**

## I. PROCEDURAL HISTORY

Plaintiffs initiated this action via a Complaint filed May 15, 2014 in the Luzerne County Court of Common Pleas, whereupon the matter was subsequently removed to the United States District Court for the Middle District of Pennsylvania. Trial is scheduled to begin on October 5, 2015. By an August 26, 2015 Order, this Honorable Court has requested all motions *in limine* to be filed by September 11, 2015.

## II. SUMMARY

Before this Honorable Court is Plaintiffs' Motion *in Limine* to preclude the testimony of Defendant Jofran Inc.'s liability expert Duane R. Ferguson. Mr. Ferguson lacks sufficient qualifications to testify to the opinions he would like to offer in this case, bases his opinions solely in speculation contrary to established facts, and makes no use of any scientific methodology. Rather, Mr. Ferguson's report (Exhibit A) is merely a mouthpiece for theories put forward by Defendant Jofran, despite those theories being without a basis in fact. Consequently,

1

Mr. Ferguson's testimony must be excluded pursuant to Rule 702 of the Federal Rules of

Evidence, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire</u>

<u>Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).

## III.  QUESTIONS PRESENTED

1. Is Defendant Jofran's liability expert Duane Ferguson, who has absolutely no experience in carpentry, woodworking, or furniture design, <u>not qualified</u> under Federal Rule of Evidence 702 to render an opinion that the chair was not defectively designed? Suggested Answer: YES

2. Are the opinions of Mr. Ferguson unreliable and thus inadmissible for lack of foundation under F.R.E. 702 where Mr. Ferguson makes assumptions contrary to established facts and provides no explanation for his conclusion that Mr. Biniek must have been on the platform when he fell to the ground?

   Suggested Answer: YES

3. Should Mr. Ferguson be barred from testifying when his opinions are unfit and therefore unhelpful to the jury because he relies on evidence that does not accurately reflect the circumstances of Plaintiff's accident?

   Suggested Answer: YES

## IV.  STATEMENT OF FACTS

### A. THE ACCIDENT

This matter arises from an incident that occurred on March 11, 2013 when Plaintiffs

Edward and Marla Biniek went to the T.J. Maxx store in the Arena Hub Plaza in Wilkes-Barre

for the purpose of purchasing kitchen chairs. As Plaintiff Edward Biniek sat on a display chair

that was on the floor to test the comfort of said chair, the chair suddenly and without warning

collapsed. Specifically, the right front leg of the subject chair separated and broke away from the

underside of the seat, causing Plaintiff to suddenly fall and violently strike his back, neck, and

head on the hard tiled floor of the T.J. Maxx store causing serious injuries. When Plaintiff sat on

2

the chair, it was positioned directly on the hard tiled floor. (Marla Biniek Dep., Exhibit B at 6:4-
7:7; Aff. of Edward J. Biniek III, Exhibit C).

Upon examination, it became immediately apparent that the subject chair was designed
and assembled in such a manner as to make it unreasonably unsafe. Immediately after the subject
chair collapsed causing Edward Biniek to fall and strike the ground, two employees of Defendant
T.J. Maxx inspected the subject chair and the similar chairs also on display. (Tara Hughes Dep.,
Exhibit D at 15:9-16:13). These employees noted that the subject chair and each of the similar
display chairs were defective in that the wood was cracking. Id. at 15:9-16:13, 30:9-31:13. It was
readily apparent to the employees that the chairs demonstrated poor workmanship. Id. The T.J.
Maxx employees then removed all of the defective chairs from the floor display. Id.

The subject chair was defective in that the pre-drilled holes for the screws were too close
to the edge of the blocks and they were made in the direction of the wood grain. (Keefer Report,
Exhibit E at 8). This design predictably led to cracks and the ultimate failing of the chair. Id.
Further, the blocks through which the front leg hanger bolts were inserted were excessive in size,
allowing for lateral movement that compromised the structural integrity of the subject chair. Id.
The subject chair also did not use available locking nuts that would better secure and tighten the
hanger bolts and better allow the chair to maintain structural rigidity. Id. The subject chair,
despite the myriad of defects it possessed, was imported, assembled, distributed, and sold by
Defendants Jofran and T.J. Maxx.

## B. FERGUSON REPORT

Defendant Jofran hired Mr. Ferguson, a mechanical engineer, to render an opinion
regarding the design of the chair involved in Plaintiff's accident. Mr. Ferguson opined that
Plaintiff's accident could only have occurred if Plaintiff sat on the subject chair while it was on

3

an elevated platform, thereby causing the chair to fall from the platform resulting in the chair leg breaking. (Ferguson Report, Exhibit A at 1). This conclusion by Mr. Ferguson has no support in the evidence of record and directly controverts the testimony of Plaintiff Marla Biniek, who was present at the time of the incident and stated affirmatively that the subject chair was on the floor—not the elevated platform—when her husband Plaintiff Edward Biniek sat on the subject chair that immediately collapsed. (Marla Biniek Dep., Exhibit B at 6:4-7:7). It also directly contradicts the affidavit signed by Edward Biniek III that the chair was on the floor at the time Plaintiff-Husband sat on it. (Exhibit C). Mr. Ferguson offers absolutely no explanation as to why it can "only" be the case that the chair fell from the platform, nor does he explain what characteristics of the broken chair indicate the subject chair experienced a traumatic impact such as falling from the elevated platform. Mr. Ferguson's conclusion represents nothing more than speculation on his part and an effort by Defendant Jofran to present an alternate and unsupported version of the accident to the jury through the testimony of a supposed expert.

Mr. Ferguson does not support any of his conclusions with measurements or detailed explanations demonstrating expert knowledge in furniture design, furniture assembly, carpentry, or material sciences (study of wood species and the behavior of wood). This is perhaps because Mr. Ferguson's CV is completely devoid of any such experience in this area. Mr. Ferguson's CV demonstrates he may perhaps be an expert in the fields of highway design, petroleum safety, and water systems, but there is absolutely no indication in his CV that he has any experience whatsoever with furniture design or furniture assembly of any kind. (Ferguson CV, Exhibit F). While Mr. Ferguson has a degree in engineering, he has no education, training, or job history that relates to proper furniture construction woodworking, or material sciences, the relevant topics in this case.

4

The Ferguson Report repeatedly states the following conclusions: (1) it is unknown what the condition of the chair was when delivered to T.J. Maxx; (2) there was no movement between the seat and chair back (not true); (3) the fasteners used were appropriate (not qualified); and (4) the moisture levels were not excessive (not qualified). The Report does not, however, offer anything more than these bare conclusory statements. None of these conclusions is supported by any expert knowledge, education, background, or experience, nor is there any indication that any scientific method was applied.

## V.   ARGUMENT

### A. LEGAL STANDARD

An expert's testimony must conform to the requirements of Rule 702 of the Federal Rules of Evidence in order to be admissible. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The Third Circuit has stated "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). These requirements have been termed the "trilogy of restrictions" and have been described more

concisely as consisting of qualification, reliability, and fit. Calhoun v. Yamaha Motor Corp., 351

F.3d 316, 321 (3d Cir. 2003). First, the witness must be qualified to testify as an expert. Id. The

second prong requires the expert's testimony to be reliable by a preponderance of the evidence

and supported by "methods and procedures of science" rather than on "subjective belief or

unsupported speculation." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994)

(quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)), cert denied 513

U.S. 1190 (1995) ("Paoli II"). This burden requires more than a *prima facie* showing that the

expert evidence is reliable. Paoli II, 35 F.3d at 743-44. Lastly, the expert's testimony must be

both relevant for the purposes of the case and assist a jury in determining the facts of the case.

Calhoun, 351 F.3d at 321. The testimony of Mr. Ferguson, offered by Defendant Jofran, satisfies

none of these requirements and therefore must be deemed inadmissible.

The seminal Supreme Court opinions on expert testimony are Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137,

141 (1999) which require District Courts to act as "gatekeepers" in ensuring that expert

testimony is reliable, relevant, and helpful to the jury. The trial judge must determine that any

and all scientific testimony or evidence is not only relevant, but reliable. Daubert, 509 U.S. at

589. Daubert held that scientific knowledge required an opinion derived from the scientific

method and supported by "appropriate validation" or "good grounds." Id. at 590. The reasoning

and gatekeeping requirement of Daubert has been extended to the testimony of engineers and

other experts who are not scientists, like Mr. Ferguson. Kumho Tire, 526 U.S. at 141.

The trial court "must examine the expert's conclusions in order to determine whether

they could reliably flow from the facts known to the expert and the methodology used." Heller v.

Shaw Industries, Inc., 167 F. 3d 146, 153 (3d Cir. 1999). An expert's testimony must rest on a

reliable foundation of methodology and physical evidence and be relevant to the particular facts of the case. Daubert, 509 U.S. at 597. There cannot be too great of a gap between the physical evidence and the opinion proffered. General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). In the present matter, Mr. Ferguson, who is entirely out of his area of expertise, relies on assumptions that are directly controverted by testimony in evidence and his opinions are contrary to the physical evidence.

## B. HAVING NO TRAINING, EDUCATION, EXPERIENCE, OR EXPERTISE IN WOODWORKING OR FURNITURE DESIGN, MR. FERGUSON LACKS THE REQUISITE QUALIFICATIONS TO RENDER OPINIONS ON LIABILITY IN THIS MATTER.

Liability in the present case rests solely on a question of the proper design, construction, and assembly of the wooden chair, a subject in which Mr. Ferguson has absolutely no experience or qualifications. "Qualification refers to the requirement that the witness possess specialized expertise." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). In determining the qualifications of an expert, the Third Circuit has held that "[w]hile the background, education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions." Calhoun, 351 F.3d at 322. An expert is unqualified if his theory of liability is grounded in an area in which the expert has no demonstrable experience. Surace v. Caterpillar, Inc., 111 F.3d 1039, 1055-56 (3d Cir. 1997).

Mr. Ferguson's report offers specific opinions concerning the nature of wood furniture, when furniture is sufficiently stable, and whether damage to a chair is consistent with loose connections. (Ferguson Report, Exhibit A at 1, 15-17). Mr. Ferguson offers these opinions despite the fact that he is utterly lacking in any experience, education, or qualification in wood, carpentry, or furniture-making. (See Ferguson CV, Exhibit F). Mr. Ferguson's CV is filled with

7

experiences, degrees, and training that may render him an expert in other fields, but conspicuously absent from his CV is any experience whatsoever with furniture or even wood in general. Notably, his CV was updated as recently as July 2015; his report in this matter was written June 29, 2015.

Mr. Ferguson is an engineer, but this alone does not enable an individual to give expert opinion in any area in which some engineers may specialize. See Calhoun, 351 F.3d at 322 (holding that where specific opinions are espoused, specific knowledge is required). In his career as an engineer, Mr. Ferguson has worked on water and sewer projects, highway design, floodplain analysis, traffic control plans, petroleum gas safety, designing underground fiber optic systems, and cell tower site plans. His additional training includes classes in traffic design characteristics, curb and pedestrian control devices, highway rumble strips, swimming pool designs, OSHA crane training, and ADA guidelines, none of which are relevant or applicable to this case. However, what is absolutely not part of his background is any sort of experience, training, or qualification that would enable him to render an opinion as to whether a piece of wood furniture was safely and properly designed and assembled. Whatever Mr. Ferguson's areas of expertise may be, woodworking and furniture-making are not among them. This dearth of experience in woodworking and furniture-making, the relevant areas in which expertise is required in this matter, render Mr. Ferguson unqualified to offer "expert" testimony.

As a result, Mr. Ferguson is unqualified to render an opinion concerning the sufficiency in the design and assembly of the subject chair because he has absolutely no qualifications that demonstrate any sort of special knowledge in woodworking, carpentry, or furniture-making.

## C. MR. FERGUSON'S OPINIONS ARE UNRELIABLE AS THEY ARE GROUNDED SOLELY IN SPECULATION THAT IS CONTRARY TO ESTABLISHED FACTS AND HAVE NO ROOT IN SCIENTIFIC METHODOLOGY.

Mr. Ferguson's "expert" report is riddled with speculation, inaccurate portrayals of facts, and relies on no discernable methodology that would render his opinion reliable. To be reliable, an expert's opinion must be based on scientific methods and procedures, not merely on "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. The party offering an expert must demonstrate that the expert's conclusions are reliable by a preponderance of the evidence. Paoli II, 35 F.3d at 744. Mr. Ferguson's conclusions are stated without any substantive analysis or explanation of his methodology to determine why he believes the failure of the subject chair could not be the result of loose connections or what led to his determination that the chair was securely fastened together.

In assessing the reliability of an expert's methodology under Daubert and Rule 702, the trial court may consider factors which include: (1) whether a method used by the expert consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Paoli II, 35 F.3d at 742 n.8.

Conclusory statements based upon speculation and unreliable methodology are the exact type of opinions that Daubert and its progeny label as inadmissible. "[N]othing in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). Although experts commonly extrapolate from the available data, district courts "may conclude there is too great an analytical gap between the data and the opinion proffered." Id. The

9

Ferguson Report contains exclusively conclusory statements from an "expert" with no carpentry or woodworking experience based on speculation and unsupported assumptions (*e.g.*, the chair being on the platform when Edward Biniek went to sit on it). The most glaring example of this is Mr. Ferguson's conclusion that the "only" situation in which the subject chair could have broken in this manner is if it fell from the elevated platform, but Mr. Ferguson provides <u>absolutely no physical evidence to substantiate this conclusion</u>. (<u>See</u> Exhibit A, at 1, 16 stating this bare bones conclusion without any explanation as to what about the condition of the chair requires the accident to have happened in this manner).

Mr. Ferguson's opinion that Edward Biniek must have fallen in the chair from atop the platform, rather than the chair collapsing while firmly on the hard tile ground, is not sufficiently tethered to any physical evidence in this case and is in fact merely speculation that runs contrary to testimony in evidence. <u>See</u> <u>General Electric</u>, 522 U.S. 136, 146 (1997); (Exhibit B at 6:4-7:7; Exhibit C). Even if this Court were to somehow find Mr. Ferguson qualified to opine on woodworking and furniture-making (which Plaintiffs strongly argue against, <u>see</u> Section IV.B above), his opinions must be barred if they are not based on sound data. <u>Montgomery County v. Microvote Corp.</u>, 320 F.3d 440, 448 (3d Cir. 2003). When conducting a <u>Daubert</u> analysis, trial courts should focus "solely on the principles and methodology, not on the conclusions they generate." <u>Id.</u>, <u>citing</u> <u>Daubert</u>, 509 U.S. at 595. If the data underlying the expert's opinion is too attenuated from the physical evidence or based upon evidence so unreliable that no reasonable expert could base an opinion on the data, then the resulting opinion must be excluded. <u>Id.</u>

That is precisely what Mr. Ferguson did in the instant matter. What is it about the damage to the subject chair that makes Mr. Ferguson so confident that the accident must have happened due to the chair being on the elevated platform when the uncontroverted evidence is that the

chair was on the floor when Plaintiff-Husband sat on it when it broke? (Exhibits B & C). Mr. Ferguson does not tell us. Mr. Ferguson cannot possibly say with any reasonable degree of engineering certainty that the subject chair broke only because it fell from the elevated platform after Edward Biniek sat down. While Mr. Ferguson makes that statement in his report, he offers no support for it and ignores evidence to the contrary. Mr. Ferguson ignores the testimony of Marla Biniek and the Affidavit of Edward Biniek, III stating the subject chair was on the floor. (Exhibit B at 6:4-7:7; Exhibit C).

Mr. Ferguson bases his conclusion entirely on Edward Biniek's testimony that he could not remember where the chair was when he sat down. However, Mr. Ferguson ignores the fact that Edward Biniek testified that regardless of where the chair was originally positioned, he is certain that it did not move, thus precluding Mr. Ferguson's conclusion that the chair slipped off the elevated platform. (Edward Biniek Dep., excerpt attached as Exhibit G at 57:18-23). Even more importantly for a so-called "expert," Mr. Ferguson fails to explain why it could only have been a fall from the elevated platform that caused the chair to break. Notably, Mr. Ferguson makes no reference to signs of trauma or damage in the collapsed chair leg that would indicate an impact from a fall off the elevated platform. The reason for this is clear: there is no such physical evidence that would support Mr. Ferguson's opinion. Rather, his report is merely Defendant Jofran attempting to sneak an alternate theory of liability through the mouth of an expert. Unfortunately for Defendant Jofran, the Federal Rules preclude an expert from doing so where the expert has not supported his opinion with sufficient facts and methodology, as is the case here.

The speculation of Mr. Ferguson is analogous to that of the plaintiff's expert in State Farm Fire & Cas. Co. v. Holmes Prods., 165 Fed. Appx. 182, 184-186 (3d Cir. 2006). There, the

11

expert claimed a lamp caused draperies to catch fire after the family's pet dog pulled the draperies over the lamp. Id. at 184-85. This conclusion was determined to be nothing more than speculation as it had no factual support, thereby precluding the expert from offering his testimony at trial. Id. The expert's theory of the dog's involvement in starting the fire "was not sufficiently supported by evidence in the record" and was stated in terms of "mere possibilities." Id. at 186. In exactly the same way, Mr. Ferguson's claim that the chair was on the platform is not supported by any facts and is in fact controverted by unwavering testimony and an affidavit.

The Ferguson Report is rife with other examples of unsupported conclusory statements that require Mr. Ferguson's testimony be precluded. His report repeatedly states some version of the statement, "the chair back was securely fastened to the seat." Not only is this conclusion inaccurate, as demonstrated by the photographs attached to Mr. Keefer's expert report (attached as Exhibit E), but Mr. Ferguson's unsubstantiated refrain evades providing any sort of specialized knowledge or factual explanation in the form of measurements or otherwise that support his opinion that the subject chair is safe in its design and assembly. Again, Mr. Ferguson states a conclusion without physical evidence to support it.

Figures 9 through 17 in the Ferguson Report purport to show that the subject chair had no cracking and that the chair was secure. (Exhibit A at 10-14). However, Mr. Ferguson's own pictures belie his conclusions. Figures 15 through 17 supposedly show, "Chair blocking showing no cracking," but even a non-expert can readily see cracking in these photographs. Even more examples of cracking in the subject chair (that Mr. Ferguson conveniently ignores) are available as attachments to the Keefer Report (Exhibit E). Figures 10 and 11 to the Ferguson Report are offered to show the "[v]iew showing the front leg tight against the seat," but Mr. Ferguson fails to address the gaping hole surrounding the screw that would allow for substantial lateral

movement. (Compare Keefer Report, Exhibit E at 8, 11). Ultimately, the photographic examples presented by Mr. Ferguson alone are sufficient to undermine his ultimate conclusions. On its face, the Ferguson Report raises more questions than it answers and can in no way be presented to a jury under the guise of expert evidence where there is no scientific backing and it stems from an inaccurate portrayal of the facts.

In addition to his unsupported conclusory statements, Mr. Ferguson's methodology—or lack thereof—renders his opinions unreliable. Mr. Ferguson made use of no methodology that would allow him to render an opinion with a reasonable degree of certainty. Instead, he relied on his own inexperienced and unqualified intuition. Such reliance is inappropriate for an expert and cannot be admitted into evidence. Oddi v. Ford Motor Co., 234 F.3d 136, 158 (3d Cir. 2000). An expert must use a methodology that allows for peer review by providing some sort of rate of error or identifying the existence of standards for determining the reliability of the supposed expert's methodology. Id. *Ipse dixit* is not such a reliable method. Mr. Ferguson makes no reference to any principles of woodworking and does not evaluate the design of the subject chair. In responding to Mr. Keefer's criticisms of the design and predictable failure of the subject chair, Mr. Ferguson offers a nonsensical response that it is devoid of substance and skirts the very remarks concerning design that he was attempting to respond to. (See Exhibit A at 16, #6). This response, and its lack of expertise or specialized knowledge, is representative of Mr. Ferguson's report as a whole.

Due to his unsupported assumptions, inaccurate portrayals of evidence of record, and lack of methodology, Mr. Ferguson's opinion is unreliable and thus inadmissible for lack of foundation.

**D. MR. FERGUSON'S OPINIONS ARE UNHELPFUL TO THE JURY BECAUSE IT IS IRRELEVANT AND RELIES ON FAULTY EVIDENCE.**

F.R.E. 702 further requires that the testimony or evidence assist the trier of act to understand the evidence or to determine a fact in issue. The Supreme Court has stated that "this condition goes primarily to relevance," and further explained:

> "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 Weinstein & Berger ¶ 702[02], p. 702–18. See also United States v. Downing, 753 F.2d 1224, 1242 (CA3 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute" The consideration has been aptly described by Judge Becker as one of "fit." Id.

Daubert, 509 U.S. at 591, 113 S. Ct. at 2795-96.

In other words, Rule 702 requires that the proposed testimony "fit" the case, meaning that it must assist the trier of fact in understanding the evidence or determining the facts in issue. In re TMI Litig., 193 F.3d 613, 670 (3d Cir. 1999). "This requirement is one of relevance and expert evidence which does not relate to an issue in the case is not helpful." Id. "[A]dmissibility depends ... on a connection between the expert opinion offered and the particular disputed factual issues in the case." Id.

For the same reasons stated above in demonstrating Mr. Ferguson's methodology to be unreliable, his testimony similarly would not assist the trier of fact. Mr. Ferguson's opinions are unhelpful to a trier of fact because they are offered by an individual who has no special knowledge or experience in woodworking or furniture-making and are purely comprised of unsupported conclusory statements based on errant assumptions. "It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record." Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002). Such is the case here, where Mr. Ferguson's assumption that the subject chair was on the elevated platform

14

instead of the firm ground is an assumption contrary to evidence of record with no support and no physical evidence supporting as much in Mr. Ferguson's report. (See, e.g., Exhibit B at 6:4-7:7). Because Mr. Ferguson is unqualified as an expert, bases his opinions on faulty assumptions, and makes conclusory statements without citing physical evidence in support thereof, his opinions are totally unhelpful to a jury and must be precluded.

In short, Mr. Ferguson's opinion and testimony must be excluded from evidence because his opinions are unfit and therefore unhelpful to the jury because he makes assumptions that are contrary to the evidence of record, has no expertise in the fields involved in this case, and utilizes no methodology beyond *ipse dixit* to conclude the subject chair was soundly designed and assembled.

## VI.   CONCLUSION

For the reasons set forth at length above, Plaintiffs respectfully request this Honorable Court grant its motion to preclude the expert report of Mr. Ferguson and any testimony proffered by him.

Respectfully Submitted,

GALFAND BERGER LLP

BY: _____
RICHARD M. JUREWICZ, ESQUIRE
1835 Market Street, Suite 2710
Philadelphia, Pa.  19103
(215) 665-1600
rjurewicz@galfandberger.com
I.D. No. 39436

DATE:

15

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD BINIEK and** | ) | **CASE NO.  3:14-1154** |
| **MARLA BINIEK,** | ) | |
| | ) | **(JUDGE MANNION)** |
| **Plaintiffs** | ) | |
| | ) | |
| v | ) | |
| | ) | |
| **T.J. MAXX/THE T.J. MAXX** | ) | |
| **COMPANIES, INC. and** | ) | |
| **JOFRAN, INC.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## CERTIFICATE OF SERVICE

I, Richard M. Jurewicz, Esquire, certify that a copy of Plaintiffs Edward and Marla

Biniek's Motion In Limine Pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc. was served

upon counsel on the 11th day of September, 2015 as listed below via Electronic Filing:

> James F. Lynn, Esquire/Kevin Monastra, Esquire
> 10 Penn Center Plaza, Suite 770
> 1801 Market Street
> Philadelphia, PA  19103
> **Attorneys for Defendant,  T J Maxx**

> Daniel Stofko, Esquire
> 409 Lackawanna Avenue, Suite 402
> Scranton, PA  18503
> **Attorney for Defendant, Jofran, Inc.**

GALFAND BERGER LLP

BY: _____
RICHARD M. JUREWICZ, ESQUIRE
1835 Market Street, Suite 2710
Philadelphia, Pa.  19103
(215) 665-1600
rjurewicz@galfandberger.com
I.D. No. 39436

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD BINIEK and** | ) | **CASE NO. 3:14-1154** |
| **MARLA BINIEK,** | ) | |
| | ) | **(JUDGE MANNION)** |
| Plaintiffs | ) | |
| | ) | |
| **v** | ) | |
| | ) | |
| **T.J. MAXX/THE T.J. MAXX** | ) | |
| **COMPANIES, INC. and** | ) | |
| **JOFRAN, INC.,** | ) | |
| | ) | |
| Defendants | ) | |

## CERTIFICATE OF NON-CONCURRENCE

I, Richard M. Jurewicz, Esquire, certify that I requested Defendant Jofran Inc.'s and

Defendant T.J. Maxx's concurrence in Plaintiff's Motion *in Limine* to Preclude the Testimony of

Defendant Jofran Inc.'s Liability Expert Duane Ferguson Pursuant to <u>Daubert v. Merrell Dow</u>

<u>Phamaceuticals, Inc.</u> and that Defendants have not offered their concurrence.

GALFAND BERGER LLP

BY: _____

RICHARD M. JUREWICZ, ESQUIRE
1835 Market Street, Suite 2710
Philadelphia, Pa.  19103
(215) 665-1600
rjurewicz@galfandberger.com
I.D. No. 39436