# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD AND MARLA BINIEK,** | **:** | |
| **Plaintiffs** | **:** | **CIVIL ACTION NO. 3:14-1154** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **MARMAXX OPERATING CORP.** and **JOFRAN SALES, INC.,** | **:** | |
| | **:** | |
| **Defendants** | | |

## <u>MEMORANDUM</u>

This case involves an incident at a T.J. Maxx store when plaintiff Edward Biniek sat on a chair assembled and sold by defendant Jofran Sales, Inc. ("Jofran"), and one of the chair legs broke causing him to fall. The incident left Mr. Biniek with various injuries which are the subject of this suit. Two of the central disputes are whether the chair Mr. Biniek sat in was located on a platform at the store or on the floor and what caused the chair leg to brake. Presently, the case is scheduled for trial starting on October 5, 2015. The parties have filed five motions in limine.

T.J. Maxx is the fictitious name for the legal entity defendant Marmaxx Operating Corporation ("Marmaxx"). Marmaxx filed three motions in limine with regard to evidence it seeks to exclude during trial. First, Marmaxx seeks to exclude portions of Jofran's expert report prepared by Duane R. Ferguson,

P.E., in which Ferguson opines that the damage to the chair was consistent with the chair being on the platform when Mr. Biniek sat on it. Marmaxx claims that this opinion has no factual basis and is not admissible at trial under FRE 702 and FRE 703. The court finds that the jury will determine where the chair was located at the time of the incident and, that if there is sufficient factual basis for Ferguson's opinion that the chair was on the platform when Mr. Biniek sat on it, his opinion will be allowed. Thus, the motion will be **DENIED WITHOUT PREJUDICE**.

Marmaxx also seeks to exclude proposed expert testimony of Ferguson that Marmaxx conducted destructive testing on the chair after the incident and caused additional damage to it, i.e., causing the other front leg of the chair to brake off. Marmaxx argues that the other chair leg broke when it was shipping the chair to Zurich Insurance Company in Connecticut after the incident and that there is no evidence that it conducted destructive testing. The court finds that the jury will determine if destructive testing was conducted on the chair after the incident or if it was simply damaged during shipping. If there is a factual basis presented at trial that destructive testing was performed, Ferguson's opinion will be allowed. Marmaxx's second motion will be **DENIED WITHOUT PREJUDICE**.

Thirdly, Marmaxx moves to preclude plaintiffs' expert, Jeffrey G. Keefer, a professional woodworker, from opining that Marmaxx was negligent in its failure to perform a "Quality Assurance Inventory Evaluation" to determine if the chair was structurally unsound. Marmaxx argues that this expert's testimony fails to meet the *Daubert* standard since he has no experience in retail industry and no expertise as to the applicable standard of care for retailers. The expert testimony of Keefer meets the *Daubert*[1] standard. Marmaxx's third motion will be **DENIED**. Marmaxx also seeks to preclude any testimony or evidence that it had a duty to inspect and/or test the chairs for defects. This request will be **DENIED** since Marmaxx put the chair on display in its store.

Jofran filed a motion in limine under FRE 701 to preclude lay witness opinion testimony regarding alleged product defects of its chairs, including the testimony of former Marmaxx employee Tara Hughes, that all the Jofran chairs in Marmaxx's possession were defective in that they had cracks where the bolts were located. Jofran claims that Ms. Hughes has no training or specialized knowledge concerning manufacturing of furniture, that she later

---

[1]See Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993).

changed her testimony, and that here testimony is unreliable, unfairly prejudicial to Jofran and will confuse the issues before the jury. Any expert opinion testimony of Ms. Hughes will be precluded since she does not possess the specialized experience or technical knowledge to offer an opinion regarding alleged defects in the chairs. However, while Ms. Hughes will not permitted to testify as an expert, she will be allowed to testify as to her personal observations of the Jofran chairs in the T.J. Maxx store. Jofran's motion will be **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs filed a motion in limine to preclude the testimony of Jofran's liability expert, Ferguson, based on *Daubert*. Plaintiffs argue that this expert's testimony fails to meet the *Daubert* standard to render an opinion regarding the design, construction, and assembly of the chair since Ferguson is a mechanical engineer with no experience in carpentry, woodworking, or furniture-making. Plaintiffs also claim that Ferguson's opinion that Mr. Biniek fell in the chair from on top of the platform as opposed to the floor of the store is not sufficiently supported by evidence. As such, plaintiffs allege that Ferguson's opinion was not based on any methodology and relied only on speculation as to where the chair was located. The expert testimony of Ferguson meets the *Daubert* standard. Also, if evidence is produced at trial

to show that the chair was on the platform when Mr. Biniek sat on it, Ferguson's opinion that Mr. Biniek fell from on top of the platform will be allowed. Plaintiffs' motion will be **DENIED, IN PART, WITHOUT PREJUDICE** as to Ferguson's opinion that the chair was on platform. Plaintiff's motion will be **DENIED** with respect to Ferguson's testimony that the chair was not defective and was properly assembled.

## I.    BACKGROUND

This action arises out of a March 11, 2013 incident that occurred at the T.J. Maxx store located at 461 Arena Hub Plaza in Wilkes-Barre, Pennsylvania. Mr. Biniek, his wife Marla Biniek, and their son, Edward Biniek, III, went to the store to purchase kitchen chairs. Mr. Biniek sat on a Bradford side chair in the store to test it. The chair components were manufactured by Thanh Phu Phat Co. Ltd. in Vietnam. The chair was assembled by Jofran in Massachusetts and shipped to T.J. Maxx in February 2013 pursuant to a Purchase Order. Plaintiffs allege that the chair was displayed on the tiled floor of the store. As Mr. Biniek sat down on the chair to test it for comfort, suddenly and without warning, the right front leg of the chair broke away from the underside of the seat, causing him to fall to the floor. He landed on his

back and right arm on the floor, and hit the back of his head. As a result, he suffered serious injuries from the accident that require ongoing treatment, including cervical disc displacement and herniation, cervicalgia, cervical facet syndrome, cervical radiculopathy, brachial radiculitis, and superscapular neuropathy. To date, Mr. Biniek has allegedly incurred $20,316.77 in medical expenses for the treatment he claims was necessary for the injuries he suffered in the accident. Plaintiffs allege that the chair was defective and that such defect was the proximate cause of Mr. Biniek's injuries.

Plaintiffs are proceeding, in part, on a theory of strict product liability, under the recent Pennsylvania Supreme Court decision in Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014), against both Marmaxx and Jofran.[2] (Doc. 24, at 7). Plaintiffs allege that the chair had both a design defect and a manufacturing defect. Since the Pennsylvania Supreme Court in *Tincher* declined to adopt Third Restatement of Torts in the context of design defect cases, plaintiffs are proceeding on their design defect strict liability claim

---

[2]Jurisdiction of this court is based on diversity pursuant to 28 U.S.C. §1332(a). As such, the substantive law of Pennsylvania law is utilized. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464 (1945).

pursuant to Section 402A of the Second Restatement of Torts.[3] Also, "the Pennsylvania Supreme Court just recently clarified in Tincher v. Omega Flex, Inc. that, under Pennsylvania law, Section 402A governs only strict liability claims, and that common law negligence claims are subject to a different standard and analysis. Schwartz v. Abex Corp., ---F.Supp.3d ----, 2015 WL 3387824, *5 (E.D.Pa. May 27, 2015) (citing Tincher, 104 A.3d at 336, 345, 358, 381-83, 384).

Plaintiffs frame the three legal issues for trial as: 1) did the chair have a manufacturing defect, i.e., improper assembly; 2) was the chair defectively designed and unsafe; and 3) was the chair in a defective condition under the Consumer Expectations Standard. (Id.). In Tincher, 104 A.3d at 383, the court stated that the non-delegable duty in a strict liability case is "a person or entity engaged in the business of selling a product has a duty to make and/or market the product—which 'is expected to and does reach the user or consumer without substantial change in the condition in which it is sold'—free

---

[3]In Tincher, 104 A.3d at 399, the PA. Supreme Court overruled Azzarello v. Black Brothers Co., Inc., 480 Pa. 547, 391 A.2d 1020 (Pa. 1978), but "declined the invitation to fill the void by simply 'adopting' the Third Restatement [of Torts] formulation" with respect to "the appropriate standard of proof of a [design defect] strict liability claim in Pennsylvania." Thus, "Pennsylvania remains a Second Restatement jurisdiction" in design cases and a strict liability cause of action sounds in tort. Id. at 399-400.

from 'a defective condition unreasonably dangerous to the consumer or [the consumer's] property.'" (citing Restatement (2D) of Torts §402A(1)). "To demonstrate a breach of duty in a strict liability matter, a plaintiff must prove that a seller (manufacturer or distributor) placed on the market a product in a 'defective condition.'" Tincher, 104 A.3d at 384. Additionally, "in Pennsylvania, the cause of action in strict products liability requires proof, in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product." Id. at 401. The alternative test standard of proof is a "composite", i.e., a standard of proof which states the consumer expectations test and the risk-utility test in the alternative. Id. at 402. "[T]he strict liability cause of action theoretically permits compensation where harm results from risks that are known or foreseeable ... and also where harm results from risks unknowable at the time of manufacture or sale ...." Id. at 404-05. Plaintiffs' strict liability claims in the present case are premised upon both a "consumer expectations" and a "risk-utility" theory. "[W]hen a plaintiff proceeds on a theory that implicates a risk-utility calculus, proof of risks and utilities are part of the burden to prove that the harm suffered was due to the defective condition of the product." Id. at 407. "Section 402A makes sellers liable for harm caused to consumers by unreasonably dangerous products, even if the seller

8

exercised reasonable care[.]" [Covell v. Bell Sports, Inc., 651 F.3d 357, 360 (3d Cir. 2011)](link).

As this case proceeded toward trial, the plaintiffs commissioned a report from Keefer, a professional woodworker and owner/operator of Classic Cabinetry which designs and manufactures high end commercial and residential office and home furniture. (Doc. [34](link)-2). In his report, Keefer opines that the chair had various design flaws, poor workmanship, and improper assembly which caused the chair to collapse when Mr. Biniek sat on it. Keefer also opines that Jofran and Marmaxx were negligent for failing to perform quality assurance evaluations on the chair when it was assembled by Jofran and when it was received by Marmaxx to see if it was structurally sound. Keefer concludes that if Jofran and Marmaxx had performed the evaluations they would have discovered that the rear corner blocks of the chair were cracked and broken, and that the hardware for the leg that failed was not properly and securely tightened. Keefer further states that Mr. Biniek did not misuse the chair or improperly sit on it, and that the chair was not overloaded when the 168-pound man sat on it.

Jofran also retained mechanical engineer Ferguson as an expert to prepare a report. (Doc. [30](link)-2). Ferguson opined that "[t]he physical damage

to the chair is only consistent with a situation in which the chair was on the platform when Mr. Biniek sat on it and the chair fell off the platform edge causing the leg to break off the chair." He also opined that "[t]he failure of the chair is not consistent with loose connections" and, that the chair was properly designed and assembled. (Id., at 4).

## II.    PROCEDURAL HISTORY

This case was commenced on May 15, 2014, when the plaintiffs filed a complaint against the defendants in Luzerne County Court of Common Pleas. (Doc. 1, Ex. A). Plaintiffs brought claims for negligence, strict liability and breach of warranties against both Marmaxx and Jofran. Mrs. Biniek has brought a loss of consortium claim against both Marmaxx and Jofran. Marmaxx removed the case to federal court on June 16, 2014. (Doc. 1).

On June 26, 2014, Marmaxx filed an answer to the complaint and a cross claim against Jofran for indemnification based on the Purchase Order warranting that Jofran would supply non-defective goods to Marmaxx. (Doc. 6). On July 7, 2014, Jofran filed an answer to the complaint and a cross claim for indemnification against Marmaxx. (Doc. 9). Specifically, in its cross claim, Jofran alleges if plaintiffs prove damages they were proximately caused by the

negligence of Marmaxx or its agents and employees, Marmaxx must indemnify Jofran for any damages. (Id., at 12).

Discovery then ensued and was completed. A pre-trial conference was held and the case was set for trial on October 5, 2015. (Doc. 23). In anticipation of trial, Marmaxx filed three motions in limine, (Docs. 30, 32, 34), and briefs in support, (Docs. 31, 33, 35). Marmaxx's motions are specified above. Jofran filed a motion in limine to preclude lay opinion testimony regarding defects in the chair and a brief in support, (Docs. 36, 37). Plaintiffs also filed a motion in limine and brief in support to preclude the testimony of Ferguson regarding liability. On September 21, 2015, plaintiffs filed a response in support of Marmaxx's motion in limine to preclude portions of Ferguson's report opining that the chair was on the platform. (Doc. 45). On September 24, 2015, Marmaxx filed a supplemental brief in support of its motion in limine to preclude portions of Keefer's report and any evidence that it had a duty to inspect and test the chair. (Doc. 47). The parties also filed exhibits with their motions and briefs.

On September 28, 2015, plaintiffs filed a brief concurring with Marmaxx's motion to preclude Jofran and Ferguson from offering evidence that Marmaxx engaged in destructive testing on the chair after the incident.

(Doc. 48). Also, on September 28, 2015, plaintiffs filed a brief in opposition to Jofran's motion to preclude lay witness testimony regarding alleged defects of the chair. (Doc. 49). Further, on September 28, 2015, plaintiffs filed a brief in opposition to Marmaxx's motion to preclude portions of Keefer's report. (Doc. 50). On September 29, 2015, Jofran filed a response and a brief in opposition to Marmaxx's motion to preclude Ferguson's testimony. (Doc. 52, Doc. 53). Also, on September 29, 2015, Jofran filed a brief in opposition to plaintiffs' motion to preclude Ferguson's testimony. (Doc. 55). No further briefs in opposition to the motions were filed by the parties. As such, the motions are now ripe for the court's decision.

## III.    STANDARD OF REVIEW

The motions presently at issue seek, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

The motions also seek to exclude expert testimony from Ferguson and Keefer at trial. The admissibility of expert testimony is governed by under FRE 702, which requires an expert witness to have "specialized knowledge" regarding the area of testimony. The Third Circuit has explained, "[t]he basis of this specialized knowledge can be practical experience as well as academic training and credentials," and "[w]e have interpreted the specialized knowledge requirement liberally." Betterbox Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 327-28 (3d Cir. 2002) (internal citations omitted). The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Id. Moreover, Rule 702 "has a liberal policy of admissibility." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997) .

When faced with a proffer of expert testimony, the court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592. The *Daubert* Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's

testimony both rests on a reliable foundation and is relevant to the task at hand." Id., at 597. The test of reliability is "flexible," and *Daubert*'s list of specific factors - testing, peer review, error rates, and "acceptability" in the relevant scientific community - neither necessarily nor exclusively applies to all experts or in every case. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

In performing its gatekeeping function to determine whether an expert's report is relevant and reliable under *Daubert* and Rule 702, "the court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. . . . Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert are within the sole province of the jury." Walker v. Gordon, 46 F. App'x 691, 695 (3d Cir. 2002) (citing Breidor v. Sears, Roebuck & Co., 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

Additionally, experts can provide an opinion about the ultimate issue in a case, but may not give an opinion tied to any legal conclusion, such as whether a defendant was negligent. Patrick v. Moorman, 536 Fed. App'x 255,

258 (3d Cir. 2013)(citing Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006); United States v. Leo, 941 F.2d 181, 196–97 (3d Cir. 1991)).

## IV.  DISCUSSION

### A. Marmaxx's Motion to Exclude Ferguson's Opinion Regarding whether the Chair was on the Platform

Marmaxx seeks to exclude portions of Jofran's expert report to the extent Ferguson opines that the damage to the chair was consistent with the chair being on the platform when Mr. Biniek sat on it. (Doc. 30). Marmaxx claims that this opinion has no factual basis and is not admissible at trial under FRE 702 and FRE 703. Marmaxx states that Mr. Biniek testified that he did not recall if the chair was on the platform or on the floor when he sat on it and it broke. (Doc. 30-3, at 3). Mr. Biniek also testified that he recalled looking at a chair in the front of one of the display platforms in the store but he did not remember if the chair was on the platform or on the floor when the incident occurred. Mr. Biniek testified that he did not touch or move the chair in any way prior to sitting upon it. He stated that his wife was in front of him and that his son was to his right. He further stated that he did not know if there were any other eyewitnesses but that a store clerk immediately came over to him after he fell. Mrs. Biniek testified that when her husband sat on the

15

chair she was five feet in front of him and that the chair was not on the platform. Rather, she stated that it was on the floor. (Doc. 30-4). She stated that nobody moved the chair before her husband sat on it. She also stated that there were about six chairs on the floor and that other chairs were on the platform. Thus, Marmaxx concludes that there is no evidence that will be presented at trial indicating Mr. Biniek sat on the chair while it was on the platform, and that the court should preclude Ferguson from testifying that the damage to the chair is consistent with the chair being on the platform when Mr. Biniek sat on it.

Plaintiffs concur with Marmaxx's motion to the extent it seeks to preclude Ferguson from offering an opinion that the damage to the chair was caused when it fell off the platform edge. (Doc. 45, at 1). Plaintiffs argue that Ferguson's opinion is based entirely on speculation. They point out that Mrs. Biniek, Ms. Hughes, T.J. Maxx sales associate, and Mary Lucille Murtha, assistant store manager, all testified that the chair was on the floor when Mr. Biniek sat on it and the front leg broke. Plaintiffs also submitted the affidavit of their son who was in the T.J. Maxx store at the time of the incident. Plaintiffs' son avers that he saw the chairs on the floor next to a large platform and that his father "walked over and then sat down on the wooden kitchen

16

chair that was on the floor in front of the platform." He then avers that he heard a loud crack and the right front leg of the chair collapsed and his father fell to the floor hitting his right side and head. (Doc. 38-2, at 52).

Jofran states that "discovery revealed that chairs and other furniture typically were displayed at T.J. Maxx on a raised platform", and that "the central question of fact in this case is whether the chair was on the raised platform or on the sales floor itself when [Mr. Biniek] sat upon it." (Doc. 25, at 2). Jofran claims that "the chair was not defective, but broke only after the chair, positioned by Marmaxx on the edge of the raised platform, fell off the platform under [Mr. Biniek's] weight and fractured upon impact with the floor." (Id.). Jofran states that despite Mrs. Biniek's testimony that the chair was on the floor, "a former T.J. Maxx employee, Tara Hughes, testified that she walked past the scene of the incident [and took "only three or four steps"] just seconds before it occurred and at that time all the chairs were on the raised platforms." (Doc. 25, at 2-3, Doc. 52, at 2). Jofran also states that in its answers to interrogatories, Marmaxx stated that the chairs were placed on the platforms for display only. Thus, Jofran contends that the fracture of the chair leg was the result of an impact with the sales floor, caused by Marmaxx's negligence and policy of displaying furniture for sale on raised platforms

17

above their sales floor, and not the result of any defect in the chair. (Doc. 25, at 10).

Marmaxx relies upon Federal Rules of Evidence 702 and 703 to support its present motion.

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
(a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based upon sufficient facts or data;
(c) the testimony is the product of reliable principles and methods;
(d) the expert has reliably applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 703 provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Third Circuit stated in Walker v. Gordon, 46 Fed.Appx. 691, 694 (3d Cir. 2002), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the

reliability of particular expert testimony under *Daubert*." (citing *Kumho Tire, 526 U.S. at 152-53*." The *Walker* Court also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" Id. (citing *Daubert, 509 U.S. at 592, 113 S.Ct. 2786*). "These gatekeeping requirements have been extended to apply to all expert testimony." Id. (citing *Kumho Tire, 526 U.S. at 147*.).

Further, the *Walker* Court, 46 Fed.Appx. at 694, stated:

> In accordance with *Daubert*, trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting *Daubert, 509 U.S. at 590*). In other words, the expert must have "good grounds" for his belief. *Id.* at 741-42 (explaining how Rule 702, which governs the use of expert testimony in the federal courts, embodies three distinct substantive restraints on the admission of expert testimony: qualifications, reliability and fit).

The Court in *Walker* provided guidance on the role of the trial court with respect to its gatekeeping requirements. The *Walker* Court, 46 Fed.Appx. at 695, explained:

> In performing its gatekeeping function and, in particular, in deciding whether an expert's report meets the reliability factor of

a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. To the contrary, the role of the District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). [FN7] Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury. *Cf. Breidor v. Sears, Roebuck and Co.,* 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

An expert need only have "good" grounds for his opinion. The basis might be imperfect to such a degree that the court would find there is some different conclusion that has stronger evidentiary support, but that does not justify exclusion. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994).

The court finds that the jury will determine where the chair was located at the time of the incident. Hughes' testimony is not definitive since she did not see any chairs on the floor when she walked a few feet away from Mr. Biniek immediately before the incident and, she only believes that the chair

was on the floor when he fell since he did not hit his head during his fall. Also, Hughes did not see the fall. Murtha was merely relying on what Mr. Biniek told her after the incident. The accident report Murtha completed after the incident also indicated that Mr. Biniek stated he "landed on his back, right arm and the back of his head." (Doc. [45](#), Exs. A, B & C). This report is not entirely consistent with Hughes' understanding of Mr. Biniek's injuries, which is, in part, the basis of her presumption of where he was when he fell.

Marmaxx's attempt to preclude Ferguson from opining that the damage to the chair was caused when it fell off the platform is based on Marmaxx's and plaintiffs' view of the facts of the case as to where the chair was located when Mr. Biniek sat on it. There is conflicting evidence as to where the chair was located at the time of the incident. The existence of conflicting evidence is not a basis to exclude an expert's testimony. [ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 290 (3d Cir. 2012)](#). The respective credibility of plaintiffs' and Jofran's experts is a question for the jury to decide. Id. (citation omitted).

If there is sufficient factual basis at trial to show that the chair was on the platform when Mr. Biniek sat on it, Ferguson's opinion that the damage to the chair is consistent with the chair situated on the platform and falling of the edge of it will be allowed. An expert's opinion must be supported by sufficient

facts. Id. However, Ferguson will not be allowed to speculate that the chair was on the platform if there is insufficient evidence presented at trial to show that it was located on the platform at the time of the incident. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242, 113 S.Ct. 2578 (1993). As such, Marmaxx's Doc. 30 motion in limine is **DENIED WITHOUT PREJUDICE**.

### *B. Marmaxx's Motion to Preclude Testimony Regarding Destructive Testing*

Marmaxx seeks to exclude proposed expert testimony of Ferguson that Marmaxx conducted destructive testing on the chair after the incident and caused additional damage to it, i.e., the other front leg of the chair to brake off as well as damage/splitting of the blocks. Marmaxx alleges that after the incident, its employees removed the damaged chair from the T.J. Maxx sales floor and placed it inside a box that was shipped to Zurich Insurance Company in Rockhill, Connecticut. Marmaxx alleges that during shipment, the other front leg of the chair broke-off. Marmaxx contends that there was no

destructive testing conducting on the chair after the incident and that there is no factual basis for Ferguson's opinion that "there is also evidence of post incident destructive testing and additional damage/splitting of the blocks." Marmaxx also maintains that Jofran's anticipated request for an adverse inference instruction due to spoliation of evidence against it based upon the claim that Marmaxx conducted destructive testing on the chair after the incident should be denied since there is no evidence that any destructive testing took place. Thus, Marmaxx states that there is no factual basis for Ferguson's opinion regarding destructive testing and it should be precluded under Fed. R. Evid. 702 and 703.

The court finds that the jury will determine if post-incident destructive testing was performed on the chair. If there is sufficient factual basis at trial to show that testing was performed on chair after the incident, Ferguson's opinion in this regard will be allowed. However, Ferguson will not be allowed to speculate that testing on the chair was performed if there is insufficient evidence presented at trial to support this claim. See, In re Flonase Antitrust Litigation, 884 F.Supp .2d 184, 190 (E.D.Pa. 2012) (Court stated that "[f]or an expert's testimony to be reliable, it "must be based on [ ] methods and procedures ... rather than subjective belief or speculation" and, that an

"expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury.") (citations omitted). Thus, the expert's testimony must fit the issues in the case. Id. As the Court stated in Walker, 46 Fed.Appx. at 695, "[a]n expert is ... permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also ... a proper subject for cross-examination." (citing Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002)). Further, if evidence is presented at trial that destructive testing was performed on the chair after the incident, then Jofran may be entitled to an adverse inference instruction regarding spoliation.[4] It is premature to determine if such an inference is warranted. As such, Marmaxx's Doc. 32 motion in limine is **DENIED WITHOUT PREJUDICE**.

### C. Marmaxx's Motion to Preclude Keefer's Testimony Regarding Quality Assurance Evaluations

Marmaxx moves to preclude plaintiffs' liability expert, Keefer, a

---

[4]Spoliation applies if the evidence in question is within the party's control and there has been an actual suppression or withholding of the evidence. "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Brewer v. Quaker State Oil Revining Corp., 72 F.3d 326, 334 (3d Cir. 1995).

professional woodworker for 25 years and owner of Classic Cabinetry, from opining that Marmaxx was negligent in its failure to perform a "Quality Assurance Inventory Evaluation" to determine if the chair was structurally unsound. (Doc. 34). Marmaxx argues that this expert's testimony fails to meet the *Daubert* standard since he has no experience in retail industry and no expertise as to the applicable standard of care for retailers. Marmaxx also notes in its motion that since plaintiffs are proceeding solely on the theory of strict product liability under Restatement (Second) §402A and its recent interpretation by the Pennsylvania Supreme Court in *Tincher, supra*, any evidence of Marmaxx's alleged negligence is irrelevant. (Id., at 2 n.1). Marmaxx did not follow up by addressing this issue in its brief and thus, waived this argument. Also, Jofran's cross claim against Marmaxx is based on the alleged negligence of Marmaxx. (Doc. 9, at 12). In any event, plaintiffs are still proceeding on their negligence claims since they recently included questions regarding negligence in their proposed special verdict questions for the jury, (Doc. 24, at 61-63), and included the elements of negligence in their proposed jury instructions, (Doc. 43).

Marmaxx states that while Keefer has an expertise in woodworking and carpentry, he has no retail experience or practical expertise to comment upon

purported standards of care as it relates to assuring the structural integrity of furniture sold by a retail store. Thus, Marmaxx contends that Keefer's credentials do not give him a basis to offer an opinion as to whether it met retail standards.

Keefer opines that if Marmaxx conducted a Quality Assurance Inventory evaluation when T.J. Maxx received the chair after it was removed from its box and again when it was placed on the display floor, "an inspection would have determined that the rear corner blocks were cracked and broken and the hardware for the failed leg was not properly and securely tightened." He concludes that "[the] chair should have never made it to the display floor" and that the design flaws he detailed in his report together with poor workmanship, improper assembly and lack of Quality Control Inspection Procedures caused the chair collapse and Mr. Biniek's accident." (Doc. 24, at 18).

Keefer's curriculum vitae, (Doc. 34-3), shows that he has considerable knowledge and 25-years experience in wood working, including design, layout, fabrication, assembly and installation of custom high end residential and business furniture. He currently owns a company that makes office and home furniture and sells his products throughout the Unites States and abroad. In liberally considering Keefer's qualifications, as the Third Circuit

requires, see Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003), Keefer has the required specialized expertise based on his knowledge, skill and experience. The court finds that Keefer's Report, (Doc. 34-2), and testimony will assist the jury in understanding the evidence to be presented at trial and in determining facts that will be in issue at trial. Thus, it meets the "fit" requirement. Marmaxx can certainly present testimony of its witnesses and its experts about retail standards for furniture. An expert, based on his experience, can testify about industry customs and practices but cannot give his opinion as to the legal duties arising from industry custom or whether a party complied with the law. See Berckeley Inv. Group, Ltd. V Colkitt, 455 F.3d 195, 218 (3d Cir. 2006). While Marmaxx's witnesses may provide the jury with factual information required to determine the relevant issues concerning the requirements for retail sale of furniture, the court finds that Keefer's testimony will also help the jury in understanding the evidence and in deciding facts regarding the stated issues. Keefer's testimony will further assist with respect to the jury's determination as to whether a Quality Assurance evaluation on the chairs should have been performed by defendants and would have prevented the incident.

Thus, Keefer is qualified, his testimony is reliable and his testimony will

assist the jury. As such, Marmaxx's Doc. 34 motion in limine is **DENIED** with respect to Keefer's testimony as to whether a Quality Assurance evaluation on the chairs should have been performed.

In its supplemental brief, (Doc. 47), Marmaxx states that in light of the proposed jury instructions submitted by plaintiffs and Jofran, they intend to argue that Marmaxx had a duty to inspect and/or test the Bradford side chair and it was negligent for failing to do so. Marmaxx contends that the court should preclude Keefer and all witnesses as well as all counsel from testifying to and/or arguing that Marmaxx had a duty to inspect and/or test the chair for defects. Marmaxx states that under Pennsylvania law, a seller or distributor of a product which was manufactured by a third party cannot be held liable for failing to inspect the product before it is sold. Marmaxx states that it cannot be held liable in a negligence action for harm caused by the condition of the chair based on its failure to inspect or test the chair before selling it. Thus, Marmaxx argues that it owed no duty to inspect and test the chair even if it had the option to examine the chair. Marmaxx submitted a portion of the deposition transcript of Jofran's President and corporate designee, Joffrey Roy, who testified that Jofran did not rely upon Marmaxx to perform any testing or inspection to assure the structural integrity of any chair that Jofran

sold to Marmaxx. (Doc. 47-4). Roy also testified that Marmaxx's Purchase Order provided that the chairs which Jofran shipped to T.J. Maxx would be properly and correctly assembled by Jofran. As such, Marmaxx maintains that it did not owe or assume a duty to inspect and/or test the chairs for defects and, that any evidence or argument to the contrary is impermissible under F.R.E. 401 and 403 because it is irrelevant and prejudicial.

Marmaxx relies upon Facciponte v. Briggs & Stratton Corp., 2011 WL 4916376 (M.D.Pa. Oct. 17, 2011), in support of its contention that it did not owe Mr. Biniek or other customers a duty of care. (Doc. 47-3). In *Facciponte*, the plaintiffs claimed that a gas-powered portable generator, manufactured by Briggs & Stratton and distributed by True Value stores, had an inadequate/missing warning regarding its operation in an enclosed space. The generator was shipped by Briggs & Stratton in a sealed container to True Value. Steven Larson bought the generator at True Value store and four men later died from carbon monoxide poisoning after using the generator in an enclosed space to provide electricity in a home. Defendants filed a motion in limine to exclude evidence of True Value's failure to inspect the generator before it was sold. Defendants argued that under Pennsylvania law True Value, as the distributor of the generator, had no duty to inspect or test the

generator and could not be liable under a negligence theory for failing to do so. The *Facciponte* Court stated that "Pennsylvania law is clear, no duty to inspect for latent or hidden defects is imposed on product distributors." Id., at *2 (citations omitted). The court held that under Pennsylvania law "product distributors, such as True Value, have no such duty to inspect [a generator manufactured by Briggs & Stratton] and that the rules of evidence forbid such evidence from being admitted to establish a distributor's negligence." Id., at *2. Thus, the court in *Facciponte* held that "True Value had no duty to inspect the generator" when it was alleged that it had an inadequate/missing warning and it was shipped by Briggs & Stratton to True Value in a sealed container. The court stated that "[i]f a product danger is found to have existed, it is the type of hidden defect that a distributor has no duty to inspect for under Pennsylvania law." The court concluded that True Value cannot be negligent for failing to inspect the generator where it had no duty to do so. The court also found no merit to the argument that True Value assumed a duty to inspect the generator under an agreement with the manufacturer because the agreement merely gave True Value the option to inspect the products to determine whether or not that individual product should be returned to the manufacturer. Id., at *7-*8. As such, the court precluded evidence of True

Value's failure to inspect the generator as irrelevant since plaintiffs proffered this evidence to establish negligence.

To maintain a negligence action, the plaintiff must show that: (1) the defendant owed a duty of care; (2) the defendant breached that duty; (3) the breach caused the injury in question; and (4) resulting damages. Berrier v. Simplicity Mfg. Inc., 563 F.3d 38, 61 (3d Cir. 2009) (citation omitted). The determination of whether a defendant owes a duty of care to a plaintiff is a question of law in Pennsylvania. Id. Marmaxx argues that as a matter of Pennsylvania law it had no duty to inspect and test the chair manufactured and assembled by third parties, including Jofran, for defects. Negligence "liability hinges upon whether the accident could have been avoided by the exercise of reasonable care." Brandon v. Ryder Truck Rental, Inc., 34 A.3d 104, 110 (Pa.Super. 2011).

The generator in *Facciponte* was shipped by the manufacturer to True Value in a sealed container and then sold to Mr. Larson. Plaintiffs alleged that defendants failed to warn them about the dangers of running the generator in an enclosed space. It is not clear in *Facciponte* if the generator was openly displayed outside of its container in the True Value store at the time Mr. Larson bought it. While the court in *Facciponte* held that True Value had no

duty to inspect the generator for latent or hidden defects, the subject chair which was in the T.J. Maxx store was removed from the corrugated box Jofran shipped it in and openly displayed to customers in the store. Indeed, the parties agree the undisputed facts are that Marmaxx employees would remove the side chairs from their corrugated boxes and write code numbers on the underside of the seat and observe any aesthetic defects. The side chairs would then be stocked on the display floor by Marmaxx employees. (Doc. 24, at 3). Evidence is relevant regarding whether Marmaxx and its employees knew or had reason to know that the chair at issue was likely to be dangerous when they unpacked the chair from its box and put it in the store on display and, whether Mr. Biniek's accident could have been avoided by the exercise of reasonable care by inspecting the chair before it was displayed. It was reasonably foreseeable that customers would sit on the chair after it was displayed in the store especially since the store did not have any sign telling customers not to sit on the furniture. In fact, Mrs. Biniek testified that she did not see any warning signs in the area of the store where the chairs were located indicating anything such as, chairs are for display only. Nor did any store employee ever tell her that the chairs were for display only. (Doc. 38-2, at 28).

Thus, Marmaxx may have had a duty to inspect the chairs after removing them from their boxes and before openly displaying them in its store. See Dahlstrom v. Shrum, 84 A.2d 289, 290 (Pa. 1951) ("Negligence is defined as the absence of care under the circumstances." "The test of negligence is whether the wrongdoer could have anticipated and foreseen the harm to the injured person resulting from his act."). As plaintiffs point out, "Marmaxx, the seller of the subject chair, placed the subject chair on display in its store without doing any sort of inspection, knowing customers may sit on it to test its comfort." (Doc. 50, at 6). Moreover, Hughes testified, after the accident she observed that the bolts for the legs of the chair were not hitting wood and they did not connect to the other part of the chair. She stated that none of the legs were bolted the correct way. Thus, the legs of the chair did not have anything in them to hold them. (Doc. 36-1, at 6-7). Hughes also testified that for the first six months when she was employed at the T.J. Maxx store the employees did not inspect the clothes that were shipped to the store before they were displayed in the store. However, the store then changed its policy and the employees were required to inspect the clothing before putting them on display. Hughes was assigned to the clothing department in the store so she did not know if the same inspection policy applied with respect to

everything that was shipped to the store and, she did not know the practice with respect to the furniture. (Id., at 7). Regardless, there is sufficient evidence to show that Marmaxx had a duty to inspect the chairs before it placed them on display in the T.J. Maxx store since it should have known that customers may sit on the chairs.

As such, Marmaxx's supplemental brief, (Doc. 47), seeking the court to preclude Keefer and all witnesses as well as all counsel from testifying to and/or arguing that Marmaxx had a duty to inspect and/or test the chair for defects is **DENIED**.[5]

### D. Jofran's Motion to Preclude Lay Testimony Regarding Product Defect

Jofran filed a motion in limine under FRE 701 to preclude lay witness opinion testimony regarding alleged product defects of its chairs, including the testimony of former Marmaxx employee Hughes that all the Jofran chairs in Marmaxx's possession were defective in that they had cracks where the bolts

---

[5]Marmaxx cannot be held liable for negligent design of the chairs. "An entity without the ability to control or alter the allegedly defective design cannot be saddled with a duty to exercise reasonable care to avoid an injury caused by the defective design." Thorpe v. Bollinger Sports, LLC, 2015 WL 5299614, *5 (E.D.Pa. Sept. 09, 2015).

were located. (Doc. 36). Hughes testified that she was working at the T.J. Maxx store on the day in question as a sales associate and that she saw Mr. Biniek right before the accident as he was in front of the display platforms looking at the chairs. Hughes stated that when she saw Mr. Biniek at the platforms, no chairs were on the floor. She did not see Mr. Biniek sit on the chair but heard him fall and, she immediately walked back to where he was and saw him on the floor. The chair was on the floor and one leg was off. After Mr. Biniek fell, Hughes spoke to him and told him she would get assistant store manager Murtha to assist him. When Murtha arrived in less than two minutes, they turned over the broken chair and, along with Mr. Biniek, saw the "defect in [the] chair", i.e., "the bolts were aimed" and "fully into the piece of wood", but they did not "hit the wood." The broken chair leg as well as the other three "didn't have anything in [them] to hold [them]" and "none of them were bolted the right way." (Doc. 36-1).

Immediately after the fall, Hughes and Murtha examined the rest of the chairs and turned them over and stated that "they were all defective" since "where the bolts were going, ... , they were not meeting where the wood would crisscross", i.e., "where the legs would go in." Thus, Hughes stated that the bolts were going in through the block of wood but "they weren't meeting the

legs." She stated that there "was a crack with the bolts" and "something didn't match up" with all of the chairs. She stated that it appeared to her "that there was poor workmanship in assembling the chairs." After their examination, Hughes and Murtha carried the rest of the chairs off of the store floor to a back room. Hughes testified that the bolts on the chairs "were aimed but not hitting the wood", that "there was a crack with the bolts", "something didn't match up", and "the bolts damaged the wood." (Doc. 36-1).

Jofran claims that Hughes' testimony regarding the alleged defects in the chairs should be precluded since she has no training or specialized knowledge concerning manufacturing of furniture, that she later changed her testimony, and that here testimony is unreliable, unfairly prejudicial to Jofran and will confuse the issues before the jury.

Federal Rule of Evidence 701 provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"First, a lay opinion must be rationally based on the witness's perception and 'firsthand knowledge of the factual predicates that form the basis for the

opinion.'" Hirst v. Inverness Hotel Corp., 544 F.3d 221, 225 (3d Cir. 2008) (citations omitted). Thus, a lay witnesses can testify about a matter based on personal knowledge or observation. "Second, lay opinion testimony must be 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" Id. at 226. A lay witnesses cannot offer an opinion about the ultimate issue of causation and it must meet the test of being helpful to the trier of fact. Thirdly, "admissible lay opinion testimony must 'not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" Id. at 227. Rule 701 requires that lay opinion testimony must satisfy all of these three criteria in order to be admissible. Id. at 225.

The testimony of Ms. Hughes will be precluded, in part, since she does not possess the specialized experience or technical knowledge to offer an opinion regarding alleged defects in the chairs. She is not an expert in furniture design and manufacture, and she cannot offer such an opinion. However, while Ms. Hughes will not be permitted to testify as an expert, she will be allowed to testify as to her personal observations and her own perceptions of the Jofran chairs in the T.J. Maxx store since this testimony will be helpful to the jury and assist it in determining the facts of this case. Jofran's Doc. 36 motion in limine is **GRANTED IN PART** to the extent that

Hughes may not render an expert opinion that the chairs were defective. Jofran's motion in limine is **DENIED** to the extent that Hughes as well as all lay witnesses can testify about their personal observations of the chairs after the incident.

### *E. Plaintiff's Motion to Preclude Ferguson's Expert Testimony*

Insofar as plaintiffs' Doc. 38 motion seeks to preclude Ferguson's opinion that Mr. Biniek must have fallen from the chair on top of the platform and contends that this opinion is not based on the evidence, as discussed above, this opinion of Ferguson may be allowed despite the disputed facts regarding this issue. As mentioned, Mr. Biniek testified that he could not remember where the chair was when he sat down. Hughes stated that seconds before the incident she saw Mr. Biniek standing by the platform and that none of the chairs were on the floor. Thus, if there is sufficient evidence introduced at trial that the chair was on the platform at the time of Mr. Biniek's fall, Ferguson's opinion will be allowed. The jury will determine where in fact the chair was at the time of the incident. An expert need only have "good" grounds for his opinion. Conflicting evidence as to where the chair was located does not exclude Ferguson's opinion. The basis might be imperfect

to such a degree that the court would find there is some different conclusion that has stronger evidentiary support, but that does not justify exclusion. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994). Thus, plaintiffs' Doc. 38 motion is **DENIED, IN PART, WITHOUT PREJUDICE**.

Plaintiffs also maintain that Ferguson is not quailed to render an expert opinion about the proper design, construction and assembly of the chairs since he has no experience in carpentry, woodworking, or furniture-making. Thus, plaintiffs allege that Ferguson is not qualified under FRE 702 to render opinions on liability, i.e., that the chair was properly assembled and designed, and they contend that these opinions should be precluded under *Daubert*. In his report, (Doc. 38-2), Ferguson offers opinions regarding the nature of wood furniture, when furniture is sufficiently stable, and whether damage to a chair is consistent with loose connections. Plaintiffs state that Ferguson is a mechanical engineer and his curriculum vitae, (Doc. 38-2, at 82-85), shows that he may be an expert in the fields of highway design, petroleum safety, and water systems, but there is no indication that he has any experience, training, or job history with furniture design, carpentry, or furniture assembly. Plaintiffs also state that Ferguson has no background in furniture construction and woodworking and, that he does not support any of his conclusions with

measurements, detailed explanations, and material sciences pertaining to the study of wood species and the behavior of wood.

The Third Circuit allows "more general qualifications of experts" which "extends to the substantive as well as the formal qualification of experts." Paoli, 35 F.3d at 741. "Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience." David v. Black & Decker (US) Inc., 629 F.Supp.2d 511, 514 (W.D.Pa. 2009). Moreover, specific opinions require specific knowledge in the field. See Calhoun, 350 F.3d at 322. Based on Rule 702's liberal policy of admissibility, Ferguson has the required specialized expertise based on his knowledge, skill and experience. In light of Ferguson's educational and professional experience, he is qualified to render opinions concerning the adequacy of the design and assembly of the chair at issue.

Plaintiffs emphasize that Ferguson lacks the necessary qualifications since he has worked on water and sewer projects, highway design, flood plain analysis, traffic control plans, petroleum gas safety, designing underground fiber optic systems, and cell tower site plans, and that he has training in traffic design characteristics, curb and pedestrian control devices, highway rumble strips, swimming pool designs, OSHA crane training, and ADA guidelines.

Nonetheless, Ferguson, as a senior project engineer for S-E-A, Ltd., currently reviews and evaluates buildings and structures for design and construction-related deficiencies, engages in project management, evaluates roofs for construction issues, and investigates structural failures in concrete, steel, timber, roofing and masonry products. Based on his training and experience, Ferguson is sufficiently qualified to render an opinion as to whether the wooden chair was properly designed and assembled.

Moreover, Ferguson's opinions that the failure of the chair could not be the result of loose connections and that the chair was securely fastened together are reliable since he thoroughly examined the chair and its design and, his opinions are stated with substantive analysis and explanation of his methodology used to make these determinations. (Doc. 38-2, at 7-19). As Jofran points out, (Doc. 55, at 3-4), Ferguson "examined the materials, fasteners and construction of the chair (and exemplars) and offer[s] an opinion as to how the incident occurred based upon [his] knowledge and experience." See David, 629 F.Supp.2d at 514 ("The inquiry into methodology is designed to ensure that an expert's opinions are based upon 'methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief.'")

(quoting Paoli, 35 F.3d at 742); see also Cuffari v. S–B Power Tool Co., 80 Fed.Appx. 749, 751 (3d Cir. 2003) ("In short, trial courts should determine whether the expert's conclusion is based on valid reasoning and reliable methodology.").

Thus, plaintiffs' Doc. 38 motion is **DENIED** insofar as Ferguson will be allowed to offer opinions that the chair was properly designed and assembled.


## V.    CONCLUSION

For the reasons discussed above, Marmaxx's first two motions in limine, (Docs. 30, 32),are **DENIED WITHOUT PREJUDICE**. Marmaxx's third motion, (Doc. 34), is **DENIED**. Jofran's motion in limine, (Doc. 36), to preclude lay opinion testimony is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' motion in limine, (Doc. 38), is **DENIED, IN PART, WITHOUT PREJUDICE** and, **DENIED** with regard to Ferguson's opinions that the chair was properly designed and assembled. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: September 30, 2015**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1154-01.wpd