UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD BINIEK and<br>MARLA BINIEK,<br><br>          Plaintiffs<br><br>     v<br><br>MARMAXX OPERATING<br>CORPORATION d/b/a TJ MAXX and<br>JOFRAN, INC.,<br><br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:14-1154<br><br>(JUDGE MANNION) |

## PLAINTIFFS' TRIAL MOTION IN LIMINE TO PRECLUDE EVIDENCE OF INJURIES UNRELATED TO THOSE PLED AND CLAIMED IN THIS LAWSUIT.

1. In this diversity based personal injury lawsuit, Plaintiff-Husband has alleged only that he suffered neck and/or cervical injuries as a result of the chair collapse accident on March 11, 2013.

2. Specifically, on page 5, paragraph 21 of Plaintiffs' Complaint, they pled the following:

As a direct and proximate result of Defendant Jofran, Inc.'s negligence and the unsafe condition of said chair, Plaintiff Edward Biniek suffered the following injuries and damages:

    (a)    Cervical disc displacement including C4-C5, C5-C6 and C6-C7 disc herniation, cervicalgia, cervical facet syndrome, cervical radiculopathy, brachial radiculitis, cervical hyperflexion/hyper extension, cervical spasm, trapezoid and rhomboid spasms, thoracalgia, cervical segmental dysfunction, thoracic segmental dysfunction, sleep disorders and superscapular neuropathy and other injuries to his nerves and nervous system, full extent of which are not yet known but believed to be permanent;

1

(b)     Great pain, suffering and loss of life's pleasures, past and future;

(c)     Loss of earnings, past and future and loss of earning capacity; and

(d)     Hospital, medical and rehabilitation expenses, past and future.

3.  Nowhere in Plaintiffs' Complaint or in discovery has Plaintiff-Husband claimed that he suffered a low back injury or injury to his lumbar spine.

4.  Defendants have identified Dr. Christopher P. Henderson as a defense medical expert who is expected to testify during trial. It is anticipated that Dr. Henderson will testify regarding Plaintiff-Husband's treatment for injections he received for his low back as part of the past medical and surgical history obtained from Plaintiff-Husband. (Exhibit A).

5.  Likewise in his deposition Plaintiff-Husband testified that he was involved in a motor vehicle accident in 2004 resulting in a low back injury in which he treated with a chiropractor named Dr. Fellerman from 2004 through 2008. However, Plaintiff had no complaints of neck pain as a result of that motor vehicle accident of 2004. (Exhibit B at p. 26).

6.  Defense counsel also inquired of Plaintiff-Husband during his deposition of a fall at work that occurred in 2001 when Plaintiff-Husband fell and injured his low back. (Exhibit B at p. 30).

7.  Additionally, defense counsel further questioned Plaintiff-Husband regarding a work related injury that occurred when Plaintiff-Husband injured his low back in 2007 while folding up some tables at the school cafeteria. (Exhibit B at pp. 31-32).

8.  Plaintiffs anticipate calling as one of their medical witnesses Dr. William F. Newhart who issued a report. (Exhibit C). Plaintiffs anticipate that Defendants will attempt to

cross-examine Dr. Newhart regarding his past medical history on Plaintiff-Husband which indicated Plaintiff-Husband had occasional low back pain.

9.  These prior accidents and injuries are completely unrelated to the injuries which Plaintiff-Husband is claiming he suffered in this lawsuit.  As such, these unrelated prior injuries are not only irrelevant but unduly prejudicial as they will tend to cause the jury to react unfavorably to the Plaintiffs in they are permitted to hear the evidence regarding prior low back injuries. See Gonzalez v. Thomas Built Buses, Inc., 2014 U.S. Dist. LEXIS 26167 (M.D. Pa. 2014) (granting motion in limine to preclude as irrelevant evidence pertaining to unrelated injuries).

10. For evidence to be admissible, it must be relevant. "Evidence is relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence to determining the action." F.R.E. 401.

11. Evidence regarding Plaintiff-Husband's history of occasional low back pain is **not** relevant because Plaintiffs have not pled any low back injuries as a result of the subject incident and therefore any history of occasional low back pain does **not** make a fact of consequence any more or less probable.

12. Even if evidence is relevant, it may be precluded as irrelevant "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." F.R.E. 403.

13. Even if Plaintiff-Husband's history of occasional low back pain were relevant, it would still have to be excluded as unfairly prejudicial and confusing to the jury. Plaintiffs have not alleged any injuries to Plaintiff-Husband's low back as a result of this incident and

3

therefore testimony regarding any previous low back injury will confuse the jury as to what Plaintiffs are alleging Plaintiff-Husband injured in the present matter.

14. It would be unfairly prejudicial to Plaintiffs if Defendants were allowed to introduce evidence regarding Plaintiff-Husband's history of low back pain to make it seem as though it were somehow related to Plaintiff-Husband's present injuries, which are wholly unrelated to his low back.

15. As a result of the likely confusion to the jury and unfair prejudice, even if Plaintiff-Husband's history of occasional low back pain were relevant—which it is not—it would still have to be precluded pursuant to F.R.E. 403.

**GALFAND BERGER, LLP**

By:                                           

**RICHARD M. JUREWICZ, ESQUIRE**
**Attorney for Plaintiffs**
**Attorney I.D. No.:  39436**
**1835 Market Street, Suite 2710**
**Philadelphia, PA 19103**
**215-665-6829**
**rjurewicz@galfandberger.com**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD BINIEK and ) | CASE NO. 3:14-1154 |
| MARLA BINIEK, ) | |
| ) | (JUDGE MANNION) |
| Plaintiffs ) | |
| ) | |
| v ) | |
| ) | |
| MARMAXX OPERATING ) | |
| CORPORATION d/b/a TJ MAXX and ) | |
| JOFRAN, INC., ) | |
| ) | |
| Defendants ) | |

## CERTIFICATION OF SERVICE

I, Richard M. Jurewicz, Esquire, do hereby certify that service of a true and correct copy

of the within Plaintiffs' Trial Motion In Limine to Preclude Evidence of Injuries Unrelated to

Those Pled and Claimed in This Lawsuit was made on September 30, 2015, Electronic E-Filing

upon the following:

EMAIL: dstofko@c-wlaw.com
Daniel D. Stofko, Esquire
Cipriani & Werner
Oppeheim Building, Suite 402
409 Lackawanna Avenue
Scranton, Pa. 18503-0600

EMAIL: jlynn@bonnerkiernan.com
James F. Lynn, Esquire
Bonner Kiernan
1801 Market Street, Suite 770
Ten Penn Center
Philadelphia, Pa. 19103

GALFAND BERGER, LLP

By: _____

RICHARD M. JUREWICZ, ESQUIRE
Attorney for Plaintiffs
Attorney I.D. No.:  39436
1835 Market Street, Suite 2710
Philadelphia, PA 19103
215-665-6829
rjurewicz@galfandberger.com

**SCRANTON ORTHOPAEDIC SPECIALISTS P.C.**
**CHRISTOPHER P. HENDERSON, M.D.**
**334 MAIN STREET**
**DICKSON CITY, PA 18519**
**(570)307-1767**

**June 5, 2015**

IN RE:  Edward Biniek                — Independent Medical Examination
DOB:   06/16/1965

      This is an independent medical examination of Mr. Edward Biniek, DOB: 06/16/1965. The examination is taking place at my office at Scranton Orthopaedic Specialists P.C. in Dickson City, Pennsylvania. Mr. Biniek was present today with a nurse. It was explained to him upon entering the room the nature of this Independent Medical Examination, in that in no way constituted the initiation of a doctor/patient relationship. He expressed understanding of this.

      Mr. Biniek is a 49-year-old gentleman who reports an injury sustained from an accident on March 11, 2013. He reports that evening that he was shopping for furniture at T.J. Max. At the end of the visit to the store he sat on a chair in the store to test it before purchasing it. Evidently, the right front leg of the chair broke and the patient fell to his right side. He reports that he landed on his right upper arm, shoulder and struck the right side of his head. He states that he did not lose consciousness. He denied any lacerations or abrasions and states that there was no bruising. He more than anything reports that he was embarrassed because this happened right in front of his son. He went home with complaints of a headache that evening. He also reported that he began having numbness and tingling in his right arm from the shoulder into the arm and hand, and occasionally similar symptoms in the left upper extremity. He states that these started essentially immediately after the fall. Given his continued symptoms, he was evaluated at an urgent care center the next day and he reports that he might have a slight concussion. From there he went to see Dr. Newhart who is his chiropractor that he has seen in the past and was getting some temporary relief with traction and other modalities. Given the persistent symptoms though, he was referred to Dr. Patel at Advanced Pain Management from the chiropractor. With Dr. Patel and his partner, he had several various injections. Mr. Biniek that initially he did get temporary relief with trigger point injections. He was subsequently referred by his mother to a physiatrist at Penn State Hershey and has had epidural injections there. He states that these really give him the best relief for a few months or so at a time. The other injections he received including facet blocks did not really give him any significant relief.

      Currently he complains of continued neck pain and pain into the right shoulder. He notes paresthesias with numbness and tingling into the right hand, and he really points to all the fingers. He occasionally has similar symptoms in the left arm. He reports a lot of trouble sleeping at night. He does continue working as a maintenance supervisor for the school district. He does take Flexeril mainly at night to help him sleep. He takes Tramadol maybe a few times a month for more severe pain. He has tried other pain medication in the past, but he stopped these because they were ineffective. He denies any objective numbness or weakness today in his upper or lower extremities. He denies any radicular pain in his legs.

PLAINTIFF'S EXHIBIT
tabbies
4

Continued . . .
Re: Edward Biniek
Date: 06/05/15
Page 2

No bowel or bladder dysfunction.

A history was obtained today from a history intake form that the patient filled out prior to the visit.

Past Medical History: As filled out by the patient shows a deviated septum when he was approximately 25 years old.

Past Surgical History: None other than injections for the "pinched nerve" and injections for back pain.

Medications: Flexeril, Ambien, Gralise although he reports that he is no longer taking this, Tramadol.

Allergies: Penicillin.

Family History: His parents are both alive and in good health. His sister is alive and in good health. He does report a blood disorder in his sister's history, and his mother does have arthritis.

Social History: He is employed as a maintenance supervisor for Wilkes Barre School District. He is married. He has two children. He reports that he exercises weekly which consists of walking. He denies any substance abuse. He currently smokes one pack per day for 15 years. He drinks alcohol one to two times a month.

Review of systems: The only pertinent positives are numbness and tingling in the right shoulder, elbow, hand and the left arm, and joint aches/pain in the right shoulder and elbow.

As recorded today at this visit, height 68 inches, weight 176 pounds, blood pressure 129/75, temperature 97.6 degrees Farenheit. The patient is a well-nourished, well-appearing, pleasant, middle-aged gentleman in no apparent distress. Upon entering the room, he is seated in a chair and is able to stand without any difficulty. He is alert and oriented times three and cooperative with the exam. His breathing is nonlabored. He walks with a nonantalgic gait. On exam of he cervical spine there is no swelling, ecchymosis or erythema. No visible or palpable muscle spasms. He has full range of motion of the cervical spine in flexion, extension, lateral rotation and lateral bending with minimal discomfort. He does have mild tenderness in the right trapezius, but no obvious spasms here. On exam of his shoulders he has essentially full active range of motion in forward flexion and abduction. There are negative impingement signs in the right shoulder and non rotator cuff weakness. No evidence of instability. He has no pain with range of motion at the elbows or wrists bilaterally.

On neurological exam sensation is intact to light touch in all dermatomes in the upper and lower extremities. He has 5/5 strength in all muscle groups in the upper and lower extremities.


PLAINTIFF'S
EXHIBIT
A

Continued . . .
Re: Edward Biniek
Date: 06/05/15
Page 3

He has symmetric 2+ reflexes at the triceps, biceps and brachial radialis. Negative Hoffman's signs bilaterally. He does have a mildly positive Tinel's at the right carpal tunnel. No Tinel's at the cubital tunnel and negative Tinel's in the left arm.

Medical records reviewed: I had the opportunity to personally review the following medical records.

1. Notes from Dr. Albert Janerich.
2. Medical records from Advanced Pain Management.
3. Medical records from Wyoming Valley Health Care System.
4. Medical records from Dr. William Newhart/Newhart Chiropractic Center.
5. Medical records from Dr. Frank Olshemski.
6. Medical records from Penn State Hershey Medical Center.
7. Medical records from Geisinger Wyoming Valley Medical Center.
8. The deposition transcript from Edward Biniek, dated February 4, 2015.
9. The incident report.

I also had the opportunity to review radiology reports from numerous diagnostic studies including MRIs of the cervical spine. These include AP and lateral x-rays of the cervical spine from Valley Open MRI and Diagnostic Center, dated March 20, 2013, AP and lateral x-rays of the thoracic spine from the same center dated March 20, 2013. Reports of cervical MRIs from the same center dated January 22, 2005, and April 16, 2013. There is also a cervical MRI report from Geisinger Wyoming Valley dated May 7, 2014.

Imaging studies I had the opportunity to personally review the following imaging studies: MRI of the cervical spine dated April 16, 2013 and MRI of the cervical spine dated May 7, 2014. On review of both of these MRIs, there is no evidence of acute fracture or acute injury. There are what I would characterize as mild degenerative changes at multiple levels. There is no evidence of disc herniation and no significant canal stenosis. There is mild foraminal narrowing on the right at C5-6. I would classify all of these as age appropriate degenerative changes.

DIAGNOSIS:
1. Right shoulder contusion.
2. Cervical contusion/strain.

DISCUSSION: Based on the discussion I had with Mr. Biniek on June 5th in my office, as well as the records I had the opportunity to review, my impression was the above stated diagnosis from this injury. It does not sound like it was a significant trauma, certainly not something that I would expect to cause long term issues. I think the contusion and strain diagnosis, which is essentially a soft tissue injury, has resolved. He does have continued complaints, but I think these are mainly from preexisting longstanding issues that he has had.



PLAINTIFF'S EXHIBIT
tabbies
A

Continued . . .
Re: Edward Biniek
Date: 06/05/15
Page 4

He has had of his cervical spine that date back to 2002 from what I can tell with no significant change. There has also been several instances in the medical records where he has had complaints of neck pain, right shoulder pain, and symptoms consistent with carpal tunnel syndrome. While he is still complaining of these similar types of symptoms, I do not think that they are causally related to this injury in March of 2013. During our visit he expressed to me that he was having a lot of trouble sleeping from his symptoms, however, again on the review of the medical records, specifically with Dr. Olshemski, his family doctor, he has been dealing with insomnia really for years prior to this injury and he has tried multiple medications for this. I think he may have continued waxing and waning of his symptoms, again from the preexisting degenerative changes. On reviewing the medical records from Dr. Janerich, his neck pain complaints have been ongoing. A note from January 30, 2007, noted that his neck pain was about 60 percent of normal. A note from Dr. Janerich on October 28, 2013, noted that his neck was 70 percent of normal which is an improvement from the 2007 and after the injury. February 11, 2014, he did note increased neck pain, but felt that it may have been aggravated by the recent heavy snow and lots of heavy work and snow blowing he was doing. April 28, 2014, his pain was 60 percent of normal and January 16, 2015, it was 40 percent of normal. The EMG study from April 23, 2013, by Dr. Janerich was interpreted as a right C7 radiculopathy, but I see no evidence of C7 nerve root compression on imaging and there are no symptoms that he points to in a specific dermatomal C7 pattern. The EMG also showed possible right carpal tunnel syndrome which is certainly possible especially with the Tinel's sign on exam. I do not feel that this was caused by the injury though. A note from Dr. Olshemski, May 9, 2012, noted bilateral carpal tunnel syndrome symptoms. There was also noted at this time that he had right shoulder discomfort and it was felt likely from a trapezius muscle irritation.

Therefore based on all of the history I obtained and the medical records I reviewed, the above diagnosis is made and I do think that he has recovered completely from this. Any further treatment for his symptoms would not be as a result of the injury sustained on March 11, 2013. All of these opinions are made within a reasonable degree of medical certainty.

Sincerely,

CHRISTOPHER P. HENDERSON, M.D.
CPH/lr





**Newhart Chiropractic Center**

Dr. William F. Newhart

December 10, 2014

Atty. Richard M. Jurewicz
1835 Market St.
Suite 2710
Philadelphia, PA     19103

**Re: Edward J. Biniek, Jr.**

SSN: 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
DOB: 6/16/1965
Onset: 03/11/2013

Dear Attorney Jurewicz:

Mr. Biniek has been treating with me for injuries as a direct result of an accident at T.J.Maxx. He presented on 3/13/2013 with neck pain, head and midback pain. He was also experiencing pain radiating down his arm to his fingers. Mr. Biniek initially, rated his symptoms as a 6. This was on a 0 to 10 scale.

## MEDICAL HISTORY

Mr. Biniek has in the past had occasional low back pain and neck pain as well as asthma. These incidents were not related to his current symptoms.

Family history: Mr. Biniek's father had cancer. Mr. Biniek's mother has arthritis.

## CONSULTATION

Mr. Biniek indicated his major symptoms developed as a result of an injury on 3/11/2013 when he was at T.J. Max testing a chair to purchase, the leg broke, causing it to collapse while sitting on it. He reports that he fell to the floor and the symptoms have been constant since. He said these or similar

PLAINTIFF'S EXHIBIT
tabbies
B

symptoms he has not experienced previously. The symptoms are constant and are consistent throughout the day with nonactivity. However, activity does increase the intensity of the pain and numbness. Activities that aggravate the symptoms are bending, coughing, lifting, reaching, sitting and turning head. Mr. Biniek reports he is on medication. Following the fall, he went to the ER where he was examined; x-rays were taken, and he was released. Additional to the major complaints, Mr. Biniek noted the following symptoms were at times present: head seems too heavy, numbness in fingers and stiff neck. The patient reports no bowel nor urinary symptoms. Past medical history is non contributory.

## EXAMINATION - 3/13/2013

## PHYSICAL

Review of Systems:

General: recent weight loss or weight gain - negative; Skin: rashes, hives or lesions - negative; HEENT: hay fever or post nasal discharge - negative; Cardiovascular: chest pain or palpitations - negative; Pulmonary: shortness of breath, wheezing or coughing   - negative; Gastrointestinal: nausea, vomiting, or diarrhea - negative; Genitourinary: frequency or urgency - negative; Lymphatic: lymphadenopathy   - negative; Endocrine: polyuria or polydipsia- negative and Neurological: history of seizures or headache-negative.
Social History: Tobacco usage - moderate. Alcohol usage - light. Drug usage - none. Exercise - seldom.
The patient is a 47 year old male, height: 68 in., weight: 155 lbs.

## INSPECTION

On inspection, the following was noted:
Patient was walking in stiff and guarded manner.

## RANGE OF MOTION

Cervical flexion - normal range of motion is 60 degrees, today's result: 25 degrees, with pain.
Cervical extension - normal range of motion is 45 degrees, today's result: 30 degrees, with pain.
Cervical left lateral flexion - normal range of motion is 45 degrees, today's

PLAINTIFF'S
EXHIBIT
B

result: 25 degrees, with pain.
Cervical right lateral flexion - normal range of motion is 45 degrees, today's result: 30 degrees, with pain.
Cervical left rotation - normal range of motion is 80 degrees, today's result: 40 degrees, with pain.
Cervical right rotation - normal range of motion is 80 degrees, today's result: 50 degrees.

Lumbar flexion - normal range of motion is 60 degrees, today's result: 30 degrees, with pain.
Lumbar extension - normal range of motion is 25 degrees, today's result: 25 degrees, with discomfort.
Lumbar left lateral flexion - normal range of motion is 25 degrees, today's result: 25 degrees, with pain.
Lumbar right lateral flexion - normal range of motion is 25 degrees, today's result: 25 degrees, with discomfort.
Lumbar left rotation - normal range of motion is 25, today's result: 25 degrees, with discomfort.
Lumbar right rotation - normal range of motion is 25, today's result: 25 degrees, with pain.

## PALPATION

On palpation, Edema noted in the cervical region at C-5 bilaterally through C-7 bilaterally. In the lumbar
region at L-4 bilaterally, L-5 bilaterally, Sacrum - right, Ilium - right.
On palpation, Taut/Tender Fibers noted in the cervical region at C-2 right through C-7 right. In the lumbar
region at L-3 bilaterally through Sacrum - bilaterally.
On palpation, Tenderness noted in the cervical region at C-4 right, C-5 right, C-6 right, C-7 right. In the lumbar region at L-4 bilaterally, L-5 bilaterally, Sacrum - right, Ilium - right.

## ORTHOPEDIC EXAMINATION

Distraction Test: positive. Shoulder Depression: positive bilaterally. Soto Hall Test: positive. Jackson Compression Test: positive right. Spurling's Compression Test: positive right. Maximum Compression: positive right. O'Donahue Maneuver: positive. Maimum Foramina Encroachment Test: positive. Lasegue's Test: positive right. Valsalva's Maneuver (sitting): positive. Minor's Sign: positive. Kemp's Test: positive. Ely's Heel to Buttocks Test: positive right. Straight Leg Raise: positive right. O'Donahues

PLAINTIFF'S EXHIBIT

tabbies

13

Maneuver: positive.

## NEUROLOGICAL EXAMINATION

Deep Tendon Reflexes:   Biceps (C5/C6):   left: normal; right: normal.
Brachioradialis (C5/C6):   left: normal; right: normal. Triceps (C7/C8):   left:
normal; right: normal. Patellar (L2/L4):   left: normal; right: normal.
Hamstrings (L4/L5):   left: normal; right: normal. Achilles (S1/S2):   left:
normal; right: normal.

## DIAGANOSTIC TESTING
**Patient sent for x-rays on 03/13/2013.**

**Cervical Views Taken:**

A-P, A-P Open Mouth, Lateral, Right Oblique and Left Oblique.

Cervical General Impressions;

C5: PR; C6: PR; C7: PR
Osteoarthritic changes noted at posterior end plates of C3 and C4. Both
spurs are extending posteriorely into the canal. Narrowed disc spacing
noted at C3/C4. Mild scoliosis noted with apex at C5.

**Thoracic Views Taken:**

A-P and Lateral:
Thoracic General Impressions:

Generalized osteoporosis: mild. Listings - T1: PR; T3: PR
Mild scoliosis noted with apex at T10.

**Cervical MRI:**
**Date of study: 4/15/2013**

Cervical General Impressions:

Straightening of the Cervical Lordosis, Dessiccation of the Cervical Discs,
Narrowing of Cervical Discs. Narrowing of C3-C4 Disc space. No intrinsic
cord abnormalities were noted.



PLAINTIFF'S
EXHIBIT
B

C2-C3 disc space had no findings.

C3-C4 disc space shows a moderate osteophyte more prominent in the left paramedical location originating from the uncinate apophysis and creating encroachment of the neural foramen on the left and more moderate on the right. This is creating mass effect on the dural sac and cord which is displaced posteriorly.

C4-C5 shows a right paramedical protrusion creating minimal indention on the neural foramen on the right. Minimal prominence of the uncinate apophysis creating mild narrowing of the neural foramen on the left. The cord is slightly flattened but there is no stenosis.

C5-C6 disc space presents with a broad-based shallow disc protrusion with marked encroachment of the neural foramen on the right. There is no central stenosis.

C6-C7 there is a shallow broad-based protrusion with bilateral encroachment of the neural foramen. There is no central stenosis.

C7-T1 disc had no findings.

## TREATMENT

During treatment, which began on 3/13/2013, Mr. Biniek was treated with: spinal manipulation, mechanical traction, PNF/ART stretching and attended ultrasound/electrical muscle stimulation combination. The goals were to decrease pain, decrease swelling/inflammation, decrease muscle spasm, increase range of motion, increase ability to perform activities of daily living, increase function, increase strength, increase flexibility, stabilize pathological joint motion and allow him to return to normal ADL's at home and work. Due to the severity of his pain and activity causing exacerbations of his symptoms, it was necessary for Mr. Biniek to be off of work. During treatment, it was also necessary to send him for consultations and treatment with other specialists. Mr. Biniek's treatment was more frequent initially, and tapered down as he was having both subjective and objective improvement. Mr. Biniek reached a point of stabilization. He was neither improving nor getting worse with non activity. However, he did, and continues to have flare-ups with activity.



PLAINTIFF'S EXHIBIT

B

## REFERRAL HISTORY

During the course of treatment it was necessary to refer Mr. Biniek for additional treatment.

In September 2013, the patient was referred to Dr. Pravin Patel, M.D. Patient was sent to Dr. Patel for evaluation and treatment as a result of his injuries that he sustained after the collapse of the chair at T.J.Maxx. Mr. Biniek's treatment has been ongoing for his pain. Mr. Biniek continued with follow up treatment with Dr. Harold Einsig, M.D. at the same Pain Management facility.

Mr. Biniek also went for a consultation with a neurosurgeon at Hershey Medical Center. The M.D. did injections and recommended that if his symptoms continued and worsened, he may be a candidate for surgery.

## CONCLUSION

Mr. Biniek initially entered the office for neck, mid back, shoulder and numbness radiating into his fingers. He reported the pain/numbness being a 6 on a 1-10 scale with activity causing an increase to his symptoms. The symptoms were interfering with both his home life and work. These symptoms were as a direct result of the injury he sustained when the chair collapsed under him at T.J.Maxx.

Prior to this injury, he had treated with me for occasional pain and stiffness on a as needed basis. He would come for treatment if he overdid anything at home. His prior problems would resolve quickly and are not contributing to this injury.

Mr. Biniek also showed degeneration on his x-rays. Again, these issues were asymptomatic prior to the injury.

It is my professional opinion that Mr. Biniek's injuries were severe that he will need ongoing treatment now and into the future. This treatment will need to be both medical and chiropractic. Mr. Biniek's injuries are of a permanent injury with damage to the ligaments, tendons, nerves, muscles and discs of his cervical spine. Due to the damage that he has sustained, this will further increase and hasten the onset of further degeneration of his cervical spine.

At the present time, Mr. Biniek's symptoms are being managed with



PLAINTIFF'S EXHIBIT

tabbies

13

treatment and medication. He still is experiencing exacerbations when doing his job at work as well as working around the house.

It is my professional opinion that with treatment, his symptoms will be kept to a point that he still can function with the least amount of pain. However, if his symptoms intensify, he may have to go for a more aggressive approach to deal with his pain, i.e. surgery.


Sincerely,

William F. Newhart D.C. cert. M.D.T.



1              IN THE UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF PENNSYLVANIA
2              - - - - - - - - - - -
3      EDWARD and MARLA BINIEK, :
       h/w,                     :
4             Plaintiffs        :
                                :
5             - vs -            :
                                :
6      MARMAXX OPERATING CORP.  :
       for T.J. MAXX/THE T.J.   :
7      MAXX COMPANIES, INC. and :
       JOFRAN SALES, INC.       :
8             Defendants   :   NO. 3:14-1154
9
10                 Oral deposition of EDWARD BINIEK,
11     JR., taken pursuant to notice, was held at
12     CIPRIANI & WERNER, PC, 409 Lackawanna Avenue,
13     Suite 402, Scranton, Pennsylvania 18503, on
14     Wednesday, February 4, 2015, commencing at 11:13
15     a.m., before CHRISTINE R. COOPERMAN, a
16     Professional Reporter and Notary Public in and for
17     the Commonwealth of Pennsylvania.
18
19     A P P E A R A N C E S:
20       GALFAND BERGER, LLP
         BY:  RICHARD M. JUREWICZ, ESQUIRE
21         1835 Market Street, Suite 2710
           Philadelphia, PA 19103
22         (800) 222-8792
           -- Counsel for the Plaintiffs
23
24              - - -
25     Job No. CS1996980

**PLAINTIFF'S EXHIBIT**

C

Page 26

1   talking way back.

2          Q.      Approximately when?

3          A.      Fellerman?

4          Q.      Yes.

5          A.      2004 through 2008, maybe.

6          Q.      Where is Dr. Fellerman located?

7          A.      He was located on Pier Street in

8   -- no.   In the beginning when I went to see him,

9   he was on Pennsylvania Avenue in Wilkes-Barre.   He

10  went to a new building, and he was on Pier Street

11  in Kingston.

12         Q.      And do you know if he's still

13  around?

14         A.      Around?

15         Q.      When was the last time --

16                 MR. LYNN:   Is he still alive --

17                 THE WITNESS:   Yeah, he's alive.

18  Practicing?   I don't know.

19  BY MR. STOFKO:

20         Q.      Just so the record is clear,

21  you're not sure if he's still practicing now?

22         A.      He's not still practicing.

23         Q.      He's not?

24         A.      No.

25         Q.      When did you last see

PLAINTIFF'S
EXHIBIT
C

Page 30

1          Q.      Before the incident at T.J. Maxx,

2     do you recall ever having an MRI for your neck?

3          A.      I don't recall that.

4          Q.      Other than the motor vehicle

5     accident in 2004, did you suffer any other

6     traumatic injuries that required medical

7     treatment, things such as a fall or maybe a work

8     injury?

9          A.      A fall at work.

10         Q.      And when was that?  An

11    approximation is fine.

12         A.      2001.  That's questionable.

13         Q.      Could you describe for us what

14    happened at that time?

15         A.      I fell on ice.

16         Q.      Where was the ice located?  Was it

17    a sidewalk, a parking lot --

18         A.      Sidewalk.

19         Q.      And that was at the school you

20    were working at?

21         A.      (No verbal response.)

22         Q.      Yes?

23         A.      Yes.  I'm sorry.

24         Q.      What was the first treatment you

25    received following the fall at work?

**PLAINTIFF'S EXHIBIT**

tabbies

**C**

Page 31

1          A.      I don't recall.

2          Q.      Were you taken by ambulance?

3          A.      No.

4          Q.      Do you recall going to the ER at

5     any point?

6          A.      Yes.

7          Q.      Do you recall any other treating

8     physicians who you treated with following the fall

9     at work?

10         A.      No.  I just don't recall.

11         Q.      Did you have a workers' comp claim

12    as a result of that incident?

13         A.      Yes.

14         Q.      Were you off work?

15         A.      Yes.

16         Q.      For approximately how long?

17         A.      I don't recall.

18         Q.      Do you recall if it was days

19    versus months or --

20         A.      Weeks.

21         Q.      And just so the record reflects,

22    that's an estimation?

23         A.      Estimation of weeks.

24         Q.      Who was your attorney in that

25    action?

PLAINTIFF'S
EXHIBIT
tabbies
C

Page 32

1          A.        I didn't have an attorney then.

2          Q.        Other than the fall at work and

3     the motor vehicle accident we just discussed, did

4     you have any other traumatic injuries for which

5     you received treatment prior to the T.J. Maxx

6     incident?

7          A.        Another work incident.

8          Q.        And what was that?

9          A.        Lifting cafeteria tables.

10         Q.        How were you injured in that

11    incident?

12         A.        I hurt my back.

13         Q.        Was this before or after the fall

14    on the ice?

15         A.        After.

16         Q.        Do you know approximately when

17    that occurred?  Let me ask you this:  Was it

18    before or after the motor vehicle accident?

19         A.        Before.

20         Q.        So it would be in between the fall

21    on the ice and the motor vehicle accident?

22         A.        Yes.

23         Q.        Were you off work for any period

24    of time as a result of the incident with the

25    cafeteria?

**PLAINTIFF'S EXHIBIT**
tabbies
C